Glenn **FRAZIER** et al., Appellants,

v.

Don R. **WYNN**, Appellee.

No. 8345.

Court of Civil Appeals of Texas,
Amarillo.

March 5, 1973.

Rehearing Denied March 26, 1973.

J. D. Crow, Canadian, for appellants.

Lemon, Close, Atkinson & Shearer, Otis C. Shearer, Booker, for appellee.

REYNOLDS, Justice.

Defendants have appealed from a judgment rendered against them for damages for breach of covenant of quiet enjoyment of a written farm lease. Affirmed.

Myrtle Frazier, vested with an undivided one-half interest, and her children, Glenn Frazier and Fern Frazier Wilson, each vested with an undivided one-fourth interest, owned approximately 1270 acres of land situated in Lipscomb County. The owners orally leased the land to Alvy Wynn on a year to year basis beginning in 1952. Glenn Frazier and Fern Frazier

Wilson executed a written instrument dated April 1, 1966, which recited that all of the land was leased to Alvy Wynn for a three year period terminating on April 1, 1969, for an annual cash rental of $2,450.00 payable in advance on the first day of April, 1966, 1967 and 1968. Although Myrtle Frazier neither was named as a party to nor signed the lease, the first annual rental installment was paid by Alvy Wynn by depositing $1,225.00 to the account of Myrtle Frazier, $612.50 to the account of Glenn Frazier, and $612.50 to the account of Fern Frazier Wilson.

Alvy Wynn died intestate on July 16, 1966, survived by his widow, Lova Wynn,[1] and her son, Don R. Wynn, who had been adopted by Alvy Wynn. The decedent's estate consisted of cattle, the 1966 lease and a pick-up truck. No administration was or has been taken out on the estate.

Lova Wynn Barnett testified that she gave her interest in the lease to her son and, on March 18, 1969, she executed a written assignment thereof to him. The cattle were retained and no question arose about the lease until on or about September 15, 1966, when Don R. Wynn and his uncle, Otis Wynn, entered into a partnership to raise cattle. Don R. Wynn furnished the leases on other lands rented by him and, so he testified, the lease in question; Otis Wynn supplied the money to purchase the cattle from the Alvy Wynn estate and, so he testified, to buy the lease in dispute. The sale check was endorsed by Lova Wynn and delivered to Farmers Home Administration, the agency that had loaned money to Alvy Wynn for his operations, but the proceeds were deficient by some $300.00 to pay Alvy Wynn's note held by that agency. Otis Wynn paid the 1967 annual rental installment due under the 1966 lease. Sometime before April, 1968, the partnership was terminated. Don R. Wynn deposited in escrow the annual rental for the third year under the lease,

but the owners did not claim the money, and the escrow deposit was returned to Don R. Wynn. Myrtle Frazier and her children leased the land to Otis Wynn on or about April, 1968. Although the record intimates this 1968 lease was by a written instrument, no written evidence thereof is included in this record.

Plaintiff Don R. Wynn then filed two suits. The first suit filed was directed against Otis Wynn for an accounting and settlement of the partnership affairs. The second suit filed named Myrtle Frazier, Glenn Frazier and Fern Frazier Wilson as defendants, and sought damages from them for breach of covenant of quiet enjoyment of the 1966 lease. The second filed suit was tried and, based upon the jury's verdict, plaintiff recovered judgment for $6,400.00 damages against the three defendants. That judgment was affirmed by this court, 459 S.W.2d 895, but the Supreme Court reversed the judgments and remanded the cause to the trial court. 472 S.W.2d 750.

In its opinion, the Supreme Court agreed with this court's determination that Alvy Wynn's death did not terminate the lease; however, the Court declared that the lease constituted a community asset vesting in the decedent's widow and son, who held the same subject to the payment of community debts and subject to the right of the estate's personal representative, who ordinarily is the only person entitled to sue for recovery of property belonging to the estate, to have possession and control under orders of the probate court during administration. Moreover, it was the Court's opinion that, although it was shown that no administration was pending, the record disclosed a necessity for administration because of unpaid estate debts; therefore, since the suit was tried less than four years after Alvy Wynn's death, plaintiff was not entitled at that time to maintain the suit in his own right as sole owner of

---

1. At the time of this trial leading to this appeal, Lova Wynn had remarried, and she is sometimes referred to hereafter as Lova Wynn Barnett.

the leasehold estate. 472 S.W.2d at 752–753. Furthermore, the Court stated that Myrtle Frazier, who did not sign the 1966 lease, was not shown to be liable by estoppel since the evidence did not show that she accepted payment with full knowledge of the material facts. 472 S.W.2d at 753.

Upon remand, plaintiff amended his petitions on file in both suits. The Otis Wynn suit was amended to allege a cause of action for contractual interference with the 1966 lease on the declaration that the cause was an alternative to the second suit, and it would not be asserted if plaintiff prevails in the second suit. The petition filed in the second suit was amended to delete Myrtle Frazier as a party defendant and to plead more fully the cause of action originally alleged. When the second suit again was called for trial, the three original defendants, joined by Otis Wynn, filed a motion to consolidate the two suits. The motion was overruled, and the trial proceeded to a jury determination.

Additional to the operative facts heretofore stated, the 1966 written lease and the assignment of Lova Wynn's interest therein were introduced in evidence. Plaintiff's mother testified that she made the assignment and sold the cattle to substantially retire the Farmers Home Administration debt. Furthermore, she stated that she never intended to convey any part of her interest in the lease to Otis Wynn. Otis Wynn testified that he bought the cattle on the condition that he be allowed to use the remaining part of the lease that was already paid for. The testimony was that for a part of the time the partnership existed, the cattle grazed land leased by Don R. Wynn other than the land owned by Myrtle Frazier and her children. It was the testimony of plaintiff that he told Glenn Frazier about the partnership arrangement and there was no objection from Glenn Frazier or from Fern Frazier Wilson. Plaintiff testified about improvements he had made on the leased land. Additionally, it was his testimony that the April 1, 1967 lease payment made by Otis

Wynn was made on behalf of the partnership. Under the 1966 lease and prior to April, 1968, Don R. Wynn was shown by the office records of the Agricultural Stabilization and Conservation Service, U. S. Department of Agriculture, to be entitled to receive, and he did receive, the lessee's allotted government payments, but in April, 1968, the records were changed to reflect those payments were to be made thereafter to Otis Wynn. When plaintiff was advised of this, he contacted Glenn Frazier who informed plaintiff the land had been leased to Otis Wynn. When Otis Wynn was asked, relative to his 1968 lease, if it was right that "you were in" and plaintiff "was out, as far as the Frazier Lease was concerned, from April, '68 to April '69," he answered, "That's right." It was Glenn Frazier's testimony that if the third year of a valid lease is taken away by leasing to another party, the first tenant is going to be damaged, and that damage is a foreseeable consequence. Plaintiff and a disinterested witness testified to plaintiff's damage in the amount of $14,430.00.

After being charged and instructed that the 1966 lease did not terminate upon Alvy Wynn's death and constituted a community asset vested in Lova Wynn Barnett and Don R. Wynn, the jury found, corresponding to the numbered special issues, that: (1–A) the Frazier lease which Alvy Wynn held at the time of his death was not assigned to Otis Wynn by Lova Wynn Barnett; (1–B) Lova Wynn Barnett assigned her interest, if any, in the Frazier land to Don R. Wynn; (2) Don R. Wynn intended to keep all of his interest, if any, in and to the Frazier land; (3) Don R. Wynn went into possession of the Frazier land in question after the cattle were sold in the Fall of 1966; (4) Don R. Wynn made the leased land available to grazing cattle owned by the partnership of Don R. Wynn and Otis Wynn, (5–A) which Glenn Frazier knew and (5–C) did not object, and (6–A) which Fern Frazier Wilson knew and (6–C) did not object; (7) the April 1, 1967 rental payment of Otis Wynn on the

Frazier lease was made on behalf of the partnership of Don R. Wynn and Otis Wynn; (8) Don R. Wynn made improvements on the Frazier land after the cattle were sold in the Fall of 1966; (9) Don R. Wynn was damaged $7,000.00 by reason of not being in possession of the Frazier lease from April, 1968 to April, 1969 (the jury being here instructed ". . . that the 'Frazier lease' referred to in the above Special Issue No. 9 refers to whatever interest was leased to Alvy Wynn in the April 1966 lease"); and (10) the defendants should have foreseen that Don R. Wynn would be damaged, if any the jury found, by the leasing of the land in question to Otis Wynn in 1968.

Defendants' motion for judgment non obstante veredicto was overruled, and judgment was entered on the jury's verdict. After their motion for new trial was overruled, defendants appealed from that judgment listing forty-one points of error.

The fourth point of error is that denial of the motion to consolidate the two suits was reversible error. The reasoning is that the motion for consolidation in actuality constituted an interpleader under Rule 43 [2] and an intervention under Rule 60, and removed the trial court's discretionary consolidation privilege granted by Rule 174 to prevent plaintiff's double recovery of damages for the same cause of action. Initially, it is observed that the motion was only for consolidation of the two suits for trial on the merits. Rule 43 is not concerned with a plaintiff's claim against a defendant; the rule authorizes an interpleader suit only when persons have such claims against a plaintiff that the plaintiff may be exposed to multiple liability. Davis v. East Texas Savings & Loan Association, 163 Tex. 361, 354 S.W. 2d 926 (1962). This record shows no claim by Otis Wynn against the plaintiff and, therefore Rule 43 is not an applicatory direction to the facts here. Implicit in

Rule 60 is that a proper party may intervene by filing a proper petition in intervention with delivery of a copy of the pleading to the opposing party. A petition in intervention envisioned by Rule 60 is distinct from a motion to consolidate under Rule 174, and there is nothing in this record to reflect that the movants were moving for anything other than a consolidation of the two suits for a trial on the merits. In any event, the trial court is permitted broad discretion in sanctioning the joinder of proper parties who are neither necessary nor indispensable to a final judgment. While Otis Wynn would have been a proper party to this suit, his joinder was not necessary to achieve the relief sought, and he was not an indispensable party in the sense that a final judgment could not be made without affecting his interest. Particularly is this true under the circumstances present here; the suit against Otis Wynn was an alternative claim for relief judicially admitted not to be asserted if plaintiff prevails in this present action. Under these conditions, the trial court did not abuse the broad discretion allowed in refusing the motion for consolidation. The fourth point of error is overruled.

The first two points are that the trial court erred in not rendering judgment for defendants because plaintiff was not entitled to bring this suit as the owner of the lease. These two points are predicated upon the Supreme Court's holding to that effect on the former appeal. There, this case was first tried less than four years after Alvy Wynn's death and during the period of time for the filing of an application for administration upon the estate. V.A.T.S. Probate Code § 74.[3] The Supreme Court held that the leasehold estate vested in Lova Wynn and Don R. Wynn, subject to the payment of community debts and subject to the estate's duly appointed and qualified personal representative's right of possession and control. It was es-

---

2. All rules cited are references to Texas Rules of Civil Procedure.

3. Subsequent references to sections are to sections of V.A.T.S. Probate Code.

tablished that at the time of the first trial there had been no administration, but at that time there was a necessity for administration because a number of estate debts were unpaid. Testimony at the second trial giving rise to the present appeal is that no administration has been had and, although the debt owed the Farmers Home Administration had not been paid in full, ". . . they [the Farmers Home Administration] wrote it [the approximate $300.00 balance due] off"; however, all the debts still have not been paid.

If there be no will, and there was none here, § 76 authorizes any interested person to make application for the appointment of an administrator. Applicable to this situation are the provisions of § 77 which specify that letters of administration may be granted to the surviving wife, or son or to a creditor, in that order, if they are qualified to act. Notwithstanding these sections, § 74 dictates that an application for administration must be filed within four years after the death of the intestate, except ". . . in any case where administration is necessary in order to receive or recover funds or other property due the estate of the decedent." Defendants argue that this section empowers the creditors at any time to prosecute the claim asserted here by plaintiff, and that the right to sue belongs to the creditors and not to the plaintiff.

■ The amended pleadings filed on January 27, 1972, were more than four years after Alvy Wynn's death; the trial, commenced on June 27, 1972, was almost six years after his demise. In the interim, neither the heirs nor the creditors of Alvy Wynn desired an administration upon his estate as evidenced by their inaction. Thus, no administration could be had, and the probate court lost power to open an administration, at the time of the amended pleadings and this trial, unless it can be said that such was necessary to recover funds due to the estate. But, the arguable precept that there was a *necessity* for ad-

ministration to recover for the estate the damages sought in the instant trial as a fund for the payment of estate debts is not cogent. All of the estate debts were barred by the general two-year and four-year statutes of limitation, Vernon's Ann. Civ.St. arts. 5526 and 5527, plus the one year following the grant of administration, if any, allowed by § 298(a) for filing claims. Moreover, § 298(c) prohibits a personal representative from allowing any claim barred by a general statute of limitation applicable thereto. No personal representative of Alvy Wynn's estate has been appointed and, the debts being barred by limitation, there is no necessity therefor. Thus, the passive creditors had no standing at the time of this trial either to seek an administration or to have their claims against the estate honored. Consequently, as the vested owner of the leasehold estate, plaintiff had the right to maintain this action at the time of this second trial. The first two points are overruled.

■ Defendants objected to the jury instruction contained in the court's charge ". . . that the April, 1966 lease on the Frazier land did not terminate upon Alvy Wynn's death and that the leasehold estate constituted a community asset and vested in Lova Wynn Barnett and Don R. Wynn." The objection was grounded on incompleteness of the instruction and defendants requested that the Supreme Court's complete statement of the law applied on the prior appeal be given. By the third and seventh points of error, defendants assert error because the instruction did not encompass the complete language used by the Supreme Court in holding the asset to be subject to estate debts and administration. Defendants contend that if the court had fully instructed the jury in the exact language used by the Supreme Court, the jury would have seen that the estate creditors had the sole right to possession of the lease. Rule 277 directs that the charge include such explanatory instructions as shall be necessary to enable the jury to properly pass upon and render a verdict on the spe-

cial issues. The instruction given was a correct statement of the law as it then applied to the litigants and to the special issues the jury was required to consider. The rule does not contemplate, much less authorize, a misstatement of the law. Assuming *arguendo* that defendants' requested fuller instruction would have had the effect, as defendants contend, of instructing the jury that the estate creditors, and not the plaintiff, had the sole right to possession of the lease, such instruction would have been a misstatement of the legal principles applicable relationally to this second trial. This is so because, as held in response to the first two points of error, the plaintiff and not the estate creditors had the right to maintain this suit at the time it was tried. These two points are overruled.

■ By the fifth point of error, defendants conclude that it was error for the court to hold that Otis Wynn made an entry under the 1968 lease, there being no such issue requested or submitted. The matter complained of in this point was not the subject of any objection made to the court's charge, and it is not contained in either defendants' motion for judgment non obstante veredicto or motion for new trial; therefore, the error complained of now was not preserved for appellate review. Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887 (1960). The point is overruled.

■ The sixth point of error has the contention that it was error for the trial court to make any implied findings whatsoever in support of the judgment rendered in view of defendants' objections. Among defendants' objections to the charge were those of the general tenor that special issue no. 3 fails to inquire about the capacity in which plaintiff went into possession of the land. Imbeded in these objections was a statement that defendants " . . . do not waive the necessity of the Plaintiff's securing Jury findings on the elements of Issues, where required, as here, nor do they concur in the Court's granting a

Judgment impliedly, finding such matters to support a Judgment, since the burden is upon the Plaintiff to submit such Issues in proper form, and as necessary to support his case without implied findings of the Court." Rule 274 requires that an objection must point out distinctly the matter to which the party objects and the grounds of his objection and, where the objections are couched in general terms, as here, Rule 322 prohibits consideration by the court. Neither the objection nor the point of error is in sufficient compliance with the rules to require, or even to justify, a consideration of the point. Wagner v. Foster, supra. The sixth point is overruled.

Points of error numbered seven through forty-one, inclusive, were presented and argued in one group. Point seven previously has been considered. Points numbered eight through sixteen, inclusive, are concerned with the court's overruling objections made to all special issues, except nos. 1–A, 1–B, 2 and 7, contained in the court's charge. Many of the points are too multifarious to comply with Rule 418, but they all will be considered for what they are apperceived to be.

■ The objection to issues no. 3 and no. 8 is that the issues failed to specify plaintiff's capacity when he went into possession of the land in question, and the issues could mean that the plaintiff's possession was as an individual or as a partner of Otis Wynn. While the issues could have been clarified to meet defendant's objection, the issues, following issues in which the court inquired whether, and the jury found that, in essence the leasehold estate was individual to plaintiff and not a partnership asset, are not subject to the vice attributed to them, for the error, if any, does not arise above harmless error. Objections levelled to special issues nos. 4 through 6–C, inclusive, and to issue no. 10, are predicated on the failure of the issues to specify the interest in the land inquired about, especially since Myrtle Frazier's one-half interest was not involved, rendering the issues "irrelevant, incongruous,

conflicting, or confusing." These issues, designed to discharge plaintiff's burden to show the landowners' consent to assignment of the lease given, were referenced to the Frazier leased land, and the 1966 lease was before the jury with all of the other evidence. In this posture, the issues were neither irrelevant nor misleading to the jury so as to be subject to the adjectival conclusions expressed.

 The objection to special issue no. 8 is that it is irrelevant and immaterial since it is not related to the capacity in which Don R. Wynn may have acted. The issue specifically names Don R. Wynn, and the consideration given to the objections to issues nos. 3 and 8 is applicable here. Special issue no. 9 was objected to because it fails to state all of the necessary elements of a damage issue. The argument is that the issue fails to instruct regarding Myrtle Frazier's interest in the land which was not in issue, and to take into account plaintiff's lawsuit pending against Otis Wynn as an offset from any damages recoverable in the present action to prevent double recovery. The jury was instructed that the interest involved was whatever interest was leased to Alvy Wynn in the April, 1966 lease, which was before the jury. In awarding less than one-half of the amount of damages testified about, the jury obviously did not consider Myrtle Frazier's interest at issue. Plaintiff judically admits that he is not entitled to recover in his alternative suit against Otis Wynn after a recovery in the present action. A consideration of the charge as a whole in connection with the record in its entirety does not reasonably support the claim that the jury was misled in the manner in which the special issues were framed; consequently, any error contained in the special issues about which defendants have complained would be innocuous. See 3 McDonald, Texas Civil Practice, § 12.37.2. Points of error numbered eight through sixteen, inclusive, are overruled.

The seventeenth through forty-first points of error are that there is no evidence and factually insufficient evidence to support the jury's findings. Defendants' brief merely states that these points have " . . . been collaterally answered and discussed with the discussion above . . . All are well taken and should be sustained simply because the answers are not supported by evidence in the record." Through the omission of the required discussion of the facts and the authorities relied upon, defendants have waived these points. Rule 418; Watson v. Godwin, 425 S.W.2d 424 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.). Nevertheless, the perusal of the record made in considering this appeal reveals that there is some evidence of probative force to support each of the jury's findings, and a view of the evidence as a whole does not disclose that the jury's verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Therefore, points numbered seventeen through forty-one, inclusive, are overruled.

The trial court's judgment is affirmed.