**Oscar B. McINNIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 8548.

Court of Civil Appeals of Texas, Beaumont.

May 21, 1981.

Rehearing Denied June 25, 1981.

Jack Skaggs, Harlingen, John Lewis, McAllen, for appellant.

Davis Grant, Jerry Zunker, State of Texas, Austin, for appellee.

CLAYTON, Justice.

This is a disbarment action. The State of Texas, acting through the Grievance Committee for District 12–B of the State Bar of Texas, instituted this disbarment suit against Oscar B. McInnis. Based upon jury findings, the trial court entered a judgment disbarring McInnis from the practice of law, from which judgment this appeal has been perfected.

The record before us is voluminous. The statement of facts is in twenty-one volumes consisting of 3,300 pages. It would serve no useful purpose to detail the evidence presented in this proceeding. The State's contentions are that all the actions complained of were committed by McInnis while serving as Criminal District Attorney for Hidalgo County, and in such capacity, as well as in the capacity as private attorney for Patricia Parada Villanueva, and that all such actions were committed by McInnis in attempts to regain physical custody of Patricia's minor child. As a result of the actions of McInnis, the jury, in response to special issues, found the following:

1. McInnis, upon certain dates in 1978, solicited and attempted to induce Daniel J. Rodriquez to cause the death of Noe Villanueva.

2. McInnis, on June 7, 1978, made a false statement before a Federal Grand Jury when he denied to the Grand Jury that he had discussed the murder of Villanueva with Rodriquez.

3. McInnis, on June 7, 1978, made a false statement before a Federal Grand Jury when he denied to the Grand Jury that he had discussed "Cantu" with Rodriquez.

4. McInnis, on June 7, 1978, made a false statement before a Federal Grand Jury when he denied to the Grand Jury that he had discussed the identification papers of Villanueva with Rodriquez and had received identification papers of Villanueva from Rodriquez.

5. McInnis, on June 7, 1978, made a false statement before a Federal Grand Jury when he denied to the Grand Jury discussing the possibility of obtaining a "hit man" for Villanueva, and when he denied that such discussion was the subject of his conversation with Rodriquez.

Based upon the above findings of the jury and the evidence presented, the trial court found that McInnis "was guilty of engaging in illegal conduct involving moral turpitude, of engaging in conduct that is prejudicial to the administration of justice and of engaging in conduct that adversely reflects on his fitness to practice law." The court further found McInnis guilty of "engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation" and entered a judgment of disbarment.

Appellant's first and fourth points complain of errors in permitting the State to call him as an adverse party witness causing him to invoke his Fifth Amendment * privilege against self-incrimination in the presence of the jury. The thrust of his argument is that this proceeding is quasi-criminal in nature, and, as such, he is entitled to the protection afforded him by the Fifth Amendment; namely, that a defendant in a criminal case shall not be compelled to give evidence against himself. He ar-gues that to permit the State to call him as a witness and to force him to invoke the privilege against self-incrimination in the presence of the jury creates such prejudice in the eyes of the jury as to constitute an effective denial of his right to invoke such privilege. At the time of this trial, there was a Federal indictment for perjury pending against him.

█ It is well settled that disbarment proceedings are civil in nature and governed by rules of civil procedure. *Drake v. State*, 488 S.W.2d 534 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Arnett v. State*, 304 S.W.2d 386 (Tex.Civ.App.—Eastland 1957, writ ref'd n. r. e.); *Meyer v. Tunks*, 360 S.W.2d 518 (Tex.1962); *Ex parte Butler*, 522 S.W.2d 196 (Tex.1975); *Polk v. State Bar of Texas*, 480 F.2d 998, 1002 (5th Cir. 1973). Since this is a civil action, it is entirely proper for the State to call appellant as a witness. *Ex parte Butler*, supra; *Meyer v. Tunks*, supra. See *United States v. White*, 589 F.2d 1283 (5th Cir. 1979). Upon becoming a witness, however, appellant retains his right and privilege against self-incrimination. *Ex parte Butler*, supra; *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975). Appellant did invoke his privilege and was permitted to do so by the trial court after being called as a witness. These points are overruled.

Appellant's second point complains of error in overruling his motion for continuance. His argument is that, because of the pendency of a criminal case against him involving some of the same accusations (i. e., perjury, as is made in this proceeding), he was entitled to a continuance of this disbarment proceeding until a final disposition of the criminal case. It is appellant's contention that: "The criminal case now . . . pending against this defendant in Federal Court, should take precedence over this case, which is a civil case only."

The granting or denial of a motion for continuance is within the sound discretion of the trial court, and the trial court's decision will not be reversed except for a clear

* U.S. Constitution.

abuse of discretion. *Hernandez v. Heldenfels*, 374 S.W.2d 196 (Tex.1963); *Arnett v. State*, supra.

▮ The record before us does not show when this disbarment case was filed, but it does show the case had been on file for many months. The record does not show how long the criminal case had been pending. Appellant's motion was filed three days prior to the day this disbarment case was called to trial. Even though an indictment might be pending against an attorney, a suit for his disbarment, on the same grounds and for the same offense, may be brought and prosecuted to judgment. *Fulmer v. State*, 445 S.W.2d 546 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n. r. e.); *Meyer v. Tunks*, supra; *Arnett v. State*, supra. If the disbarment trial was continued until all criminal charges against this attorney were resolved, this disbarment suit may well be delayed for several months or years. In light of the fact that the purpose of disbarment proceedings is to protect the public, not to punish the attorney, a long and indefinite delay in the disbarment proceeding would be an unreasonable approach to the judicial process in seeking or obtaining the protection of the public. We find no constitutional or statutory provisions granting this appellant the right to choose the case, either criminal or civil, which he desires to first proceed to trial. This disbarment proceeding is a separate and distinct matter and completely independent of any other proceedings which were pending. See *In the Matter of Bates*, 555 S.W.2d 420, 478 (Tex.1977). There is no showing by appellant that the trial court abused its discretion in overruling the motion for continuance. This point is overruled.

Appellant's fifth point complains of the admission in evidence of the "alleged Grand Jury testimony of the Defendant" and the alleged tape recordings between the defendant and the witness Daniel Rodriquez because the conduct of law enforcement agents in obtaining this evidence is so outrageous that due process principles bar the plaintiff from invoking judicial processes to obtain a disbarment of the defendant by the use of such evidence. Even though this point is multifarious, we will consider the same. *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex.1976).

▮ Appellant relies upon the language used in *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), that "involvement of government agents in a crime might bar prosecution if the methods used violate a 'fundamental fairness, shocking to the universal sense of justice'. . . . " This defense is founded on due process and is reserved for the extreme case where the government's activity is "outrageous" or "grossly shocking." This disbarment proceeding is a civil proceeding and is not a criminal prosecution. It is not even necessary for the State to prove a criminal offense. The question before the trial court was whether such acts constituted professional misconduct, not whether all the elements of a criminal offense were present. *Smith v. State*, 523 S.W.2d 1, 5 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

▮ Appellant's authorities barring prosecution for a criminal offense are not applicable to this civil proceeding. Moreover, upon a review of the record before us, we do not find that any actions of the "governmental agents" are so outrageous as to render the evidence complained of inadmissible in this proceeding based upon such grounds of complaint. This point is overruled.

▮ Appellant next complains of admitting the tape recordings of conversations between defendant and Rodriquez because the recordings were illegally obtained in violation of *Tex.Penal Code § 8.06* (1974). We do not agree. Again, appellant reiterates his argument that this proceeding is a quasi-criminal proceeding and that he is afforded the protection of the *Section 8.06* of the Penal Code, which provides a defense, in a criminal prosecution of entrapment. This proceeding is not a criminal prosecution, and, therefore, such *Section 8.06* is not applicable. This disbarment proceeding is a civil action. The plaintiff in

this proceeding has no authority to prosecute appellant in a criminal case. The defense of entrapment is not available to this appellant in this disbarment proceeding. *Dotson v. Texas State Board of Medical Examiners,* 607 S.W.2d 36 (Tex.Civ.App.—Fort Worth 1980), rev'd on other grounds, reported in the Supreme Court Journal Vol. 24, at 274. This point is overruled.

Appellant, in his seventh, eighth, and ninth points of error, complains of the introduction into evidence of a copy of the transcript of his testimony before the Federal Grand Jury for the reasons: (1) the State had not obtained an order of disclosure as required by *Rule 6(e)* of the Federal Rules of Criminal Procedure; (2) the transcript from which the copy was made "had been previously introduced in a Federal Court hearing for the limited purpose of that hearing"; (3) there was no proper predicate laid for its introduction.

In attempting to prove that appellant had made false statements to a Federal Grand Jury, the State introduced, over appellant's objections, a copy of his testimony given before such grand jury. At a prior hearing in the United States District Court in Brownsville, counsel for appellant introduced a copy of the transcript of his testimony. At the time this transcript was introduced at such hearing, it became a public record filed among the papers in Cause No. B–78–33, styled *United States v. Oscar McInnis and Patricia Prada,* which is still pending in the United States District Court, Brownsville, Texas. In an appeal by the government in this Federal case to the Court of Appeals, Fifth Circuit, in New Orleans, Louisiana, a copy of the transcript, which was offered by appellant, was attached to the government's brief and was then, as now, a matter of public record. The appellant himself made this transcript of his testimony before the grand jury a matter of public record prior to the time of its admission in evidence in the case at bar.

■ Appellant argues that this transcript was not admissible in this disbarment proceeding because it was introduced by appellant in the criminal proceeding for the limited purpose for that hearing only. Assuming, *arguendo,* the validity of such argument, with which we do not agree, we have found nothing in the record before us showing that such a limited offer was made. Such a limited offer has been challenged by appellee in its brief. Appellant has not pointed out in his brief where such offer for a limited purpose can be found in the record. The burden is on appellant that the record supports his contentions and to point out the place in the record where the matters complained of are shown. See *City of Manvel v. Texas Department of Health Resources,* 573 S.W.2d 825 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.); *Kropp v. Prather,* 526 S.W.2d 283 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.). Appellant has failed to meet his burden.

■ Since appellant himself introduced this evidence in the criminal prosecution in the United States District Court, we must presume, in the absence of proof to the contrary, that he did not do so in violation of *Rule 6(e), Federal Rules of Criminal Procedure.* The copy of the transcript introduced in the case at bar was obtained from the files of the criminal case in the United States Court of Appeals, Fifth Circuit, and such copy was properly authenticated by the Clerk of the Court of Appeals. The Federal Grand Jury court reporter properly identified the transcript and testified that she had actually recorded and reproduced it and that such reproduction was accurate and correct. The copy of the transcript was properly admitted into evidence. These points are overruled.

Appellant's tenth, eleventh, twelfth, and thirteenth points complain of error in not requiring the jury to make a finding regarding "intent in Special Issue No. 1"; that appellant "intended that D. Rodriquez cause the death of Noe Villanueva"; that there was no pleading or evidence to support Issue No. 1; that the evidence conclusively established that appellant did not attempt to induce or solicit Rodriquez to cause the death of Villanueva; and that any such finding is against the great weight and preponderance of the evidence. We do not agree.

Special Issue No. 1 was submitted to the jury as follows:

"Did Oscar B. McInnis, on or about April 17, 1978, and various dates subsequent thereto, up to and including May 21, 1978, solicit and attempt to induce Daniel J. Rodriquez to cause the death of Noe Villanueva?"

 After a careful review of all the evidence, according to the standard of review expressed in *Rourke v. Garza*, 530 S.W.2d 794, 799 (Tex.1975), and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), we find such evidence was legally and factually sufficient to support the submission and the jury's finding on such Special Issue; and the pleadings, including appellee's trial amendment, were sufficient to support the submission of such Special Issue. A finding on "intent" was not necessary in this case. Once again appellant assumes, in his argument, that this is a criminal or quasi-criminal proceeding, and, once again, we reject such argument. As stated in *Smith v. State*, supra at 5–6:

"The State does not have the burden of proving the criminal offense.... The question before the trial court was whether such acts constituted 'professional misconduct' not whether all of the elements of a criminal offense were present."

These points are overruled.

Appellant's fourteenth point complains of error in "submitting Special Issues Nos. 2, 3, 4, and 5 to the jury without requiring the jury to find that, if such false statements were made, they were made knowingly or intentionally, or that they were material to any issue or made with intent to mislead or deceive." Issue No. 2 inquired of the jury if appellant made a "false statement before a Federal Grand Jury when he denied to the Grand Jury that he discussed the murder of Noe Villanueva with Daniel J. Rodriquez."

 Appellant argues the necessity of inquiring if such act was committed "knowingly" or "intentionally" in the issue submitted to the jury. We do not agree. The authorities cited by appellant to support his argument are criminal cases concerning the essential elements of a criminal offense and the necessary allegations contained in an indictment. Again, we point out this is not a criminal prosecution, and it is not necessary for the State in this civil proceeding to prove all the elements of a criminal offense. The question before the trial court was whether such acts constituted professional misconduct, not whether all the elements of a criminal offense were present. *Smith v. State*, supra. This point is overruled.

Appellant's fifteenth point complains of error in submitting Issues Nos. 2, 3, 4, and 5 "without requiring this jury to find that the alleged false statements contained in each issue [were] actually made." We consider this point even though it is multifarious. The thrust of appellant's argument is that Issue No. 2, referred to in the preceding fourteenth point, assumes that appellant discussed "the murder of Noe Villanueva with Rodriquez," and that a separate issue should have been submitted making such inquiry. We do not agree. A careful review of the evidence shows that appellant discussed the murder of Villanueva with Rodriquez, and the transcript of the grand jury testimony clearly reveals that appellant denied having such discussions when he testified before the grand jury. Appellant offered no evidence disputing this testimony. It is well settled that it is not necessary for the trial court to submit an issue on an undisputed fact. *Sullivan v. Barnett*, 471 S.W.2d 39, 42 (Tex.1971); *Wright v. Gernandt*, 559 S.W.2d 864 (Tex.Civ.App.— Corpus Christi 1977, no writ). The same argument is made as to Issues Nos. 3, 4, and 5, and we find the evidence as to the statements in each issue is undisputed. This point is overruled.

 Appellant's sixteenth point complains of error "in entering a judgment not supported by the findings of the jury." This point of error is entirely too general to be considered on appeal. It does not comply with the rules requiring that points of error direct the attention of the appellate court to the specific error relied upon. *Tex.*

R.Civ.P. 418; *McWilliams v. Muse*, 157 Tex. 109, 300 S.W.2d 643 (1957); *Pleasant Grove Builders, Inc. v. Phillips*, 355 S.W.2d 818 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r. e.); *Salazar v. Valdez*, 587 S.W.2d 519 (Tex. Civ.App.—Corpus Christi 1979, no writ); *Cortez v. Corsi*, 513 S.W.2d 648 (Tex.Civ. App.—Corpus Christi 1974, writ ref'd n.r.e.).

Appellant's seventeenth point complains of error "in not submitting to the jury requested issues and explanatory instructions on entrapment." We again reiterate, as was stated in a prior point of error, that the defense of entrapment is not available to appellant in this disbarment proceeding, and such issues and instructions relating to such defense were properly refused.

Appellant's eighteenth and nineteenth points complain of error in overruling his motion for instructed verdict on grounds of no evidence and insufficient evidence. In deciding a no evidence point, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. We must consider all the evidence in the light most favorable to appellee, in this instance, discarding all contrary evidence and inferences. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). After a careful review of all the evidence, and applying the proper standard of review, we find there is legally sufficient evidence of probative force to support the findings of the jury. This no evidence point is overruled. We also overrule the "insufficient evidence point" for the reason that an "insufficiency" point cannot be the basis for an instructed verdict. The rule is well settled that "where an issue or verdict has some support in the evidence, although the great weight and preponderance of the evidence may be the other way," then the trial court cannot direct a verdict or grant a judgment notwithstanding the verdict. *Gulf, Colorado & Santa Fe Railway Company v. Deen*, 158 Tex. 466, 312 S.W.2d 933, 937, cert. denied, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958).

Appellant's twentieth point complains of the admission in evidence of the "tapes of the alleged conversations between Rodriquez and appellant because of the lack of a proper predicate."

The tape recordings introduced in evidence were made by Rodriquez while he was an inmate of the Hidalgo County jail. They were recordings of conversations between Rodriquez and appellant. Three of the taped recordings were made on a cassette recorder provided by the Sheriff. Six tapes were made on a recording device provided by agents of the F.B.I. The Sheriff kept the first three tapes in his possession at all times until they were placed in the custody of the F.B.I. agent. Rodriquez heard these three tapes; he recognized the conversations and testified there was no difference between the conversations on the tapes and his recollection of such conversations. He also identified the voices on the tapes as being his and appellant's. The Sheriff testified that up until the time he released custody of the tapes to the F.B.I., there had been no changes, additions, or deletions made to the tapes. He further identified the voices as those of Rodriquez and appellant.

At the time these three tapes were turned over to the F.B.I., an Assistant U.S. District Attorney listened to the tapes, made copies of them, and testified there was no difference between the tapes introduced into evidence and the ones he had heard when they were turned over to the F.B.I., and that they were the same tapes. He also identified the voices as those of Rodriquez and appellant.

The witness Graham, an agent of the F.B.I., furnished the recording instrument for making the tapes identified as Exhibits 18a through 23a. The machine was a cassette recorder. He had heard the tapes many times before he actually turned them over for safekeeping in the "F.B.I. Office." He testified he detected no difference in the tapes as introduced and the ones he had heard on many occasions while they were actually in his custody. He testified there were no changes, deletions, or additions to them between the times he had heard them played.

The equipment used in taping the conversations was identified, explained, and demonstrated for the benefit of the court and jury. The speakers whose voices were on the tapes were identified as those of Rodriquez and appellant. It was shown there had been no changes, alterations, or deletions on the tapes from the time they were recorded until they were introduced in evidence. The authenticity of the tapes was clearly established. The trial court properly admitted the tapes in evidence. See *In the Matter of Bates*, supra; *Edwards v. State*, 551 S.W.2d 731 (Tex.Cr.App. 1977); *Drake v. State*, supra.

Appellant next complains, in his twenty-first point, of error in limiting the testimony of appellant's witnesses for impeachment purposes only. In his point of error, he specifically names eight witnesses. We find nothing in this record showing a "blanket" ruling of the court limiting the testimony of each witness. Appellant does not complain of any specific questions or answers propounded or given. He does not make any reference to the testimony so limited and does not comply with the requirements of *Tex.R.Civ.P. 418(e)*. In not complying with such rule, we cannot determine the evidence about which complaint is made. No attempt has been made to show how any ruling of the trial court has been prejudicial to appellant. No authorities are cited in support of this point. Where there has been no compliance with *Rule 418(e)*, we have no duty to make an independent search of the voluminous record before us to ascertain if the point has merit. *Saldana v. Garcia*, 155 Tex. 242, 285 S.W.2d 197, 200 (1955). Appellant, by such omissions, has waived this point of error. *Frazier v. Wynn*, 492 S.W.2d 54, 61 (Tex.Civ.App.— Amarillo 1973, writ ref'd n.r.e.).

Appellant next complains of "denial of due process under the Fourteenth Amendment of the U.S. Constitution because he was not afforded the opportunity to defend himself before the local Grievance Committee." We do not agree. Appellant answers this complaint in his first sentence of his argument under this point. He states, "[T]he defendant was called before the Grievance Committee at a time when he had a pending indictment" against him. The record, cited by appellant, shows he appeared with counsel before the Grievance Committee. He states in his brief, "The testimony of this witness further established that [appellant] exercised his constitutional privilege and answered no questions 'other than a few of a preliminary nature.'" This clearly shows appellant was present at the meeting of the Grievance Committee, was afforded an opportunity to testify, and did testify to a limited extent. He was not denied the opportunity to defend himself before such committee. This point is overruled.

Appellant next complains of error in "failing to require the State to prove the alleged acts of misconduct by the 'clear and convincing' standard instead of the 'preponderance of the evidence standard.'" The charge given by the trial court required the jury to make affirmative answers to the issues submitted based upon a preponderance of the evidence. Appellant made no objections to this standard of proof. In the absence of objection, any complaint regarding form or substance of any special issue was waived. *Traylor v. Gray*, 547 S.W.2d 644 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.); *Ives v. Webb*, 543 S.W.2d 907 (Tex.Civ.App.—Corpus Christi 1976, no writ); *Crutcher-Rolfs-Cummings, Inc. v. Ballard*, 540 S.W.2d 380 (Tex.Civ.App.— Corpus Christi 1976, writ ref'd n.r.e.), cert. denied, 433 U.S. 910, 97 S.Ct. 2978, 53 L.Ed.2d 1095 (1977); *Tex.R.Civ.P. 272*. If such an objection to the charge had been timely made, we would overrule this point. The proper standard of proof of all issues in this disbarment proceeding is by a preponderance of the evidence. See *In the Matter of Bates*, supra; *In re Brown*, 512 S.W.2d 317, 330 (Tex.1974); *Drake v. State*, supra.

Appellant's twenty-fourth point complains of error in that "[t]he 93rd District Court erred in ruling on the motion to recuse himself rather than referring the motion to the Presiding Judge of the Administrative District." This case was origi-

nally docketed in the 93rd District Court, Hidalgo County. During the pendency of this proceeding, counsel for appellee, by a letter to Judge Joe A. Cisneros, Judge of the 93rd District Court, suggested to the judge that he recuse himself "from this case without any further involvement and allow the presiding judge to appoint someone else." At a "hearing concerning this letter," counsel for appellant and appellee both stated they did not consider the letter as a motion to recuse, but the court stated he would consider the letter as such a motion. During this informal meeting in Chambers, there was a lengthy colloquy between the court and counsel which was concluded by this statement by the Judge:

"I am going to recess this motion and give you time to work with Judge Alamia [the Presiding Judge of the Administrative District] and see if you cannot agree on another judge to come and sit in the case. Either by recusal or by assignment, or by transfer or whichever way you want to handle it."

The next thing appearing in the record with reference to this matter is an Order of Transfer stating:

"Be it remembered that by the consent order of the Judges of Hidalgo County District Courts, the following entitled and numbered causes are hereby Ordered transferred from the 93rd District Court of Hidalgo County Texas, to the 206th District Court of Hidalgo County Texas, to wit:

"Cause No. C–7178–78–B

"The State of Texas vs. Oscar B. McInnis

"Done and entered this the 14th day of March, 1979.

| | |
|---|---|
| /s/ Judge, 93rd District Court Hidalgo County, Texas | /s/ Joe B. Evins Judge, 206th District Court, Hidalgo County, Texas." |

o

■ *Tex.Rev.Civ.Stat.Ann. art. 200a, § 6* (Supp. 1980–1981) provides, inter alia: "A District Judge shall request the Presiding Judge to assign a judge of the Administrative District to hear any motions to recuse such district judge from a case pending in his court."

Where such a motion to recuse has been filed, the trial judge is under a mandatory duty to make such request from the Presiding Judge of the Administrative District. See *McLeod v. Harris*, 582 S.W.2d 772 (Tex. 1979); *Society of Separationists, Inc. v. Strobel*, 593 S.W.2d 855 (Tex.Civ.App.— Austin 1980, no writ). However, the Supreme Court in *McLeod v. Harris, supra,* points out that under the terms of this statute the motion to recuse does not in itself disqualify the local judge. The statute merely prohibits the local judge from passing upon the merits of the motion, requiring that another judge be assigned to determine the merits of the motion.

In the present case, the record clearly shows that Judge Cisneros did not rule upon the motion to recuse, but stated he would give counsel time and the opportunity to consult with the Presiding Judge of the Administrative District for the purpose of agreeing upon another judge to try the case. We note that appellant, in his "Motion to Strike and Answer to Motion to Disqualify," states:

"Defendant McInnis has heretofore offered in writing to agree that this case may be heard by either the Honorable Joe A. Cisneros of the 93rd District Court (where now pending), the Honorable Joe B. Evins of the 206th District Court, or the Honorable Fidencio M. Guerra of the 139th District Court, all District Judges of Hidalgo County, Texas. . . ."

This case was assigned to and tried by Judge Evins, and appellant makes no complaint of the order transferring this case to the 206th District Court. The only complaint made by appellant is that Judge Cisneros ruled upon and denied the motion to recuse. The record before us does not support this complaint. To the contrary, the record shows that Judge Cisneros did not rule upon the motion but referred the matter to Judge Alamia, the Presiding Judge of the Administrative District. Appellant has failed to show any error in this proceeding. This point is overruled.

We have carefully considered all other points brought forward and overrule them as being without merit.

Finding no error, the judgment of the trial court is affirmed.

AFFIRMED.