This appeal is from an order of the Alabama State Board of Medical Examiners revoking Edward Charles Ferguson's license to practice medicine.
Dr. Ferguson was charged with practicing medicine in such a manner as to unwarrantedly endanger the health and safety of his patients with regard to: (1) the quantity of controlled substances prescribed, (2) the frequency of such prescriptions, and (3) the medical judgment exercised in prescribing controlled substances.
The only witness who testified in support of the Board of Medical Examiners' complaint was Mr. Vick McClellan, an employee of the Alabama Department of Public Safety, Bureau of Investigation of Narcotics, who testified that he collected from pharmacists prescriptions which Dr. Ferguson had written between August 1978 and February 1979. Certain prescriptions for large quantities of controlled substances were admitted into evidence. Dr. Ferguson also testified, and various members of the Board of Medical Examiners questioned him regarding specific patients, specific habits, his personal life, and specific prescribing practices and procedures. At the conclusion he was advised that the Board would look into the situation and notify him of its decision. Subsequently, the Board entered the following order revoking Dr. Ferguson's certificate to practice medicine:
 The Alabama State Board of Medical Examiners met on October 17, 1979, with Edward Charles Ferguson, M.D., and heard extensive testimony concerning the prescribing of controlled substances by Dr. Ferguson for several of his patients. The Board heard testimony relating to the amount and frequency of controlled substances prescribed by Dr. Ferguson for a number of specific patients and questioned Dr. Ferguson concerning his exercise of medical judgment in deciding to issue the various prescriptions. It was the unanimous opinion of the Board that Dr. Ferguson improperly and excessively prescribed controlled substances to patients; that Dr. Ferguson prescribed Percodan for patients complaining of headaches without properly evaluating the patients; that Dr. Ferguson improperly treated dysuria with Dyazide; that Dr. Ferguson improperly administered intravenous Lanoxin to a patient with tachycardia without ascertaining the amount of Digitalis that the patient had been taking; and that Dr. Ferguson treated patients with excessive doses of thyroid medication without first utilizing adequate screening and diagnostic procedures. It was further the unanimous opinion of the Board that Dr. Ferguson does not possess sufficient medical knowledge to practice medicine without endangering *Page 983 
the health and safety of his patients.
 The aforesaid considered, it is ORDERED, ADJUDGED, AND DECREED that the certificate of qualification to practice medicine in the State of Alabama previously issued to Edward Charles Ferguson, M.D., be and the same is hereby revoked.
Dr. Ferguson contends that the Board's order should be reversed because (1) it was not supported by a preponderance of the evidence and is procedurally and legally insufficient, since there was no expert testimony produced at the hearing as to the propriety or impropriety of Dr. Ferguson's prescribing practices and (2) the hearing did not comport with the requirements of procedural due process.
Section 34-24-90 of the Alabama Code provides that before a physician's certificate to practice medicine is revoked, he shall have been found guilty of an offense specified therein by a preponderance of the evidence propounded before the board. Section 34-24-105 provides that on appeal of such cases to this court, the decision of the Board revoking a certificate shall not be reversed if it is "supported by the transcript of testimony." Thus, on appeal, an order of the Board revoking a certificate is reviewed to determine if it is supported by a preponderance of the evidence, and if so, it must be affirmed.
There is no requirement that expert testimony be produced at a hearing before the Board of Medical Examiners. The Legislature, in creating the Board of Medical Examiners has vested the authority to judge the professional conduct of physicians in a body wholly composed of medical experts — the body best qualified by training and experience to exercise this authority. Accordingly, there is no prohibition against the members of the Board relying upon their own expertise in reaching a conclusion. Jaffe v. State Department of MentalHealth, 135 Conn. 339, 64 A.2d 330 (1949). The existence or non-existence of expert testimony only goes to the evidentiary question of whether the Board's order is supported by a preponderance of the evidence.
The evidence unquestionably establishes that Dr. Ferguson frequently prescribed high quantities of Class II controlled substances. It is common knowledge that many of these drugs lead to addiction or dependency or are otherwise harmful to one's health. Prescriptions for Class II controlled substances were introduced for some forty-five patients of Dr. Ferguson. Many patients were prescribed Class II drugs on a regular basis and in combination with other drugs, including other Class II drugs, and in very large quantities. For instance, one patient was prescribed 620 tablets of valium, 245 of quaalude, 70 of norgesic forte, 1 ounce tincture of opium as well as other Class II drugs during the eight-month period from August 1978 to April 1979. Another patient was prescribed 665 quaalude and valium tablets over a forty-one day period. Three other patients were each prescribed an average of 147 percodan tablets a month for six months. One patient was prescribed, over a six and a half month period, 2 ounces tincture of opium, 30 tablets of valium, 195 of quaalude, 240 of percodan, and 216 of mephergan forte.
Of course, it may be necessary to prescribe high quantities of controlled substances despite the risks in some cases, such as terminal cases where the pain is intense; however, the record is silent as to any such situation in this case. Moreover, Dr. Ferguson himself admitted, "I recognize that I overprescribed for certain people," although he did state that he has since corrected such prescribing practices.
We agree with Dr. Ferguson that the preponderance of the evidence does not support the Board's specific findings that he improperly treated dysuria with Dyazide and, in fact, contradicts the finding that he administered Lanoxin without ascertaining the amount of digitalis taken by the patient. Furthermore, we do not find sufficient evidence to affirm the extraneous finding that Dr. Ferguson does not possess sufficient medical knowledge to practice medicine. *Page 984 
Nonetheless, these particular erroneous findings do not warrant reversal. The doctrine that error, in order to furnish a ground for reversal, must be prejudicial is generally applied to review of a decision by an administrative board. 2 Am.Jur.2dAdministrative Law § 758 (1962). Moreover, by statute, the harmless error rule is made applicable to the review of a decision of the Board of Medical Examiners. See Code 1975, § 34-24-104; ARAP 45. We find that the erroneous findings are non-prejudicial since the Board's finding that Dr. Ferguson endangered the health and safety of patients by improperly and excessively prescribing controlled substances is supported by a preponderance of the evidence, and serves without more, as a valid ground of revocation of Dr. Ferguson's medical certificate.
Dr. Ferguson also argues that the hearing was conducted in a fashion which denied him due process of law: that it was conducted in "a fashion that was disorderly, unfair, and without any similarity of established rule or order." It is true that members of the Board repeatedly interrupted the direct examination of Dr. Ferguson to ask questions. However, "[a]n appellate court should view with less strictness the procedural aspects of proceedings before an administrative body than when dealing with procedural aspects occurring in a lower court." State v. Alabama Public Service Commission, 293 Ala. 553,562-63, 307 So.2d 521, 528-29 (1975).
Dr. Ferguson was confronted with the charges against him and was afforded a hearing with representation by counsel. He was allowed to cross-examine the witness against him and to present his own evidence as well as to make closing statements. Furthermore, Dr. Ferguson was supplied with the written findings of the Board based on the evidence. We find from a review of the record that Dr. Ferguson was given notice and the opportunity to be heard, in compliance with the standards announced in Katz v. Alabama State Board of Medical Examiners,351 So.2d 890 (Ala. 1977). Thus, the hearing was not conducted in such a manner as to amount to a denial of due process.
Accordingly, the order of the Board of Medical Examiners revoking Dr. Ferguson's certificate to practice medicine in Alabama must be affirmed.
AFFIRMED.
MADDOX, ALMON, SHORES and BEATTY, JJ., concur.
EMBRY, J., with whom FAULKNER and JONES, JJ., concur, dissents.