Charles Ray JOHNSON, D.M.D.,
Appellee/Counter–Appellant,

v.

BOARD OF GOVERNORS OF REGISTERED DENTISTS OF the STATE OF OKLAHOMA, a Body Politic and Corporate, Appellant/Counter–Appellee.

No. 82371.

Supreme Court of Oklahoma.

March 19, 1996.

Concurring Opinion of Justice Opala
Corrected March 25, 1996.

As Corrected May 2, 1996.

Hammons & Associates by Mark Hammons, Oklahoma City, Oklahoma, for appellee/counter-appellant Charles Ray Johnson, D.M.D.

Susan B. Loving, Attorney General of Oklahoma, Rabindranath Ramana, Scott Boughton, James Robert Johnson, Assistant Attorneys General, Oklahoma City, Oklahoma, for appellant/counter–appellee Board of Governors of Registered Dentists of State of Oklahoma.

HODGES, Justice.

## I. Issues

The issues before this Court are (1) whether the district court had jurisdiction, (2) whether an administrative agency is required to adopt rules under rule-making procedures setting out standards for the imposition of punishment, (3) what is the standard of proof for imposing discipline in a proceeding against a person who holds a professional license, (4) whether the rule establishing the standard of proof in this matter as a preponderance of the evidence was properly promulgated as an emergency rule, and (5) whether the district court erred when it ordered the members of the Board of Governors of Registered Dentists of the State of Oklahoma (Board or Dental Board), including the member conducting the investigation, disqualified. We hold (1) the district court had jurisdiction over this matter, (2) the Board was not required to establish guidelines for the imposition of discipline, (3) the proper standard of proof in disciplinary proceedings against a person holding a professional license is clear and convincing evidence, and (4) the district court was within its discretion when it ordered the members of the Board disqualified from hearing the proceeding against the appellee. Because we find the proper standard of proof is clear and convincing, we need not address the procedures under which the Board promulgated the rule establishing a preponderance of the evidence as the standard of proof.

## II. Facts

The Board's statement of the facts is uncontested. Beginning January 1992, the Board received some complaints against Dr.

Johnson, the plaintiff in this case. The complaints alleged Dr. Johnson allowed dental assistants to perform procedures which should have been performed only by a licensed dentist. The complaints were initially investigated by the Board's investigator, David Murdock. On finishing his investigation, Mr. Murdock drafted a summary of his findings. Based on an unwritten practice of the Board, the summary was submitted to the Board member for the district in which the complaints arose. The member in this case was Dr. James Farley. Dr. Farley was a competitor of Dr. Johnson since they practiced in the same geographical area.

Dr. Farley then conducted his own investigation.[1] Dr. Farley determined the evidence warranted a hearing and requested the Board appoint him as the investigatory officer. The Board granted his request at its March 14, 1992 meeting. At the May meeting, Dr. Farley recommended a hearing be set as soon as the statutes allowed. Thus, the Board voted to hold the hearing on May 30, 1992. Following the May meeting and without a vote of the Board, the Board's special prosecutor issued a formal complaint against Dr. Johnson.[2] Dr. Farley admits it was his decision to issue the formal complaint but insists he was acting on behalf of the Board.

After the formal complaint was issued and the hearing was set, Dr. Johnson requested a continuance of ninety days which was granted in part with the hearing rescheduled for July 24, 1992. On July 15, 1992, Dr. Johnson filed a petition in the district court. On July 21, the district court granted Dr. Johnson a temporary restraining order prohibiting the Board from holding an administrative hearing and setting the matter for a hearing in the district court for permanent relief.

On August 11, 1992, the Board's new president ordered a hearing before the Board on September 10, 1992. On September 1, 1992, Dr. Johnson filed another request for an injunction against the Board. After a hearing, the district court found if the Board's hearing were held on September 10, 1992, Dr. Johnson could not prepare an adequate defense. The district court found the Board had not complied with parts of Dr. Johnson's discovery requests. On October 6, the district court filed an order enjoining the Board from holding a disciplinary hearing before December 7, 1992.

On January 7, 1993, the Board held a meeting at which it voted not to disqualify Dr. Farley as the investigating officer and not to disqualify the other members of the Board from hearing the allegations against Dr. Johnson. At the same meeting, the Board voted not to adopt certain rules but defined the standard of proof in the proceedings against Dr. Johnson as a preponderance of the evidence.

As a result of the action taken at this January meeting, Dr. Johnson again filed a petition in the district court asking it to enjoin the Board from proceeding against him because the Board had not properly adopted a rule setting the standard of proof in disciplinary proceedings as clear and convincing. Dr. Johnson also requested the members of the Board, including Dr. Farley, be disqualified in the proceedings against him. The district court entered a temporary stay until the issues raised by Johnson could be resolved.

The district court cases were then consolidated. At a hearing on March 24, 1993, the district court issued a writ of prohibition from the bench. Then on April 27, 1993, it entered a written order prohibiting the Board from proceeding against Dr. Johnson

---

1. The Board's rules provide for the President of the Board to designate one of the members to investigate a complaint and determine whether a formal hearing is warranted. Board of Governors of Registered Dentists Rule 195:3–1–2(b). The Board's rules do not require the investigatory member be approved by the Board.

2. Rule 195:3–1–4(a) of the Board's rules specifies:

In each instance where a formal hearing is to be conducted, the Board shall cause to be prepared a "Statement of Complaint or Purpose of Investigation" which shall include the allegations or charges concerning which the hearing is to be conducted. Such statement shall advise the person complained against ... of the charges made of Purpose of Investigation in order that he or she may prepare the appropriate defenses and have benefit of a full and complete hearing thereon.

until it had properly enacted rules in compliance with the Administrative Procedures Act. The district court refused to identify particular deficiencies but found that the Board had failed to adopt a rule establishing the standard of proof in disciplinary proceedings.

In the interim, on April 2, 1993, the Board adopted a rule under the emergency procedures setting the standard of proof as a preponderance of the evidence. The rule was filed with the Governor on April 8, 1993, and signed by the Governor on May 21, 1993, forty-three days after it was filed with the Governor but more than forty-five days after it was adopted.

After the rule was signed by the Governor, Dr. Johnson filed a motion for summary judgment and supplements thereto arguing the rule was not properly adopted. He also reasserted the proper standard of proof was clear and convincing evidence and the members of the Board should be disqualified from proceeding against him.

On September 17, 1993, the district court issued an order which is the subject of this appeal. The district court (1) found the rule adopting a preponderance of the evidence as the standard of proof in disciplinary proceedings before the Board was properly adopted and complied with due process requirements, (2) found the Board's complaint against Dr. Johnson was void because it had not been properly issued, (3) prohibited the Board from taking any disciplinary action against Dr. Johnson until it adopted rules establishing objective guidelines categorizing offenses by seriousness and specifying a punishment proportionate to the seriousness of the offense, and (4) disqualified the present members of the Board, including the member investigating the charges, from participating in any disciplinary proceedings against Dr. Johnson. The Board appealed, and Dr. Johnson filed a counter-appeal.

III. Jurisdiction

■ The Dental Board is subject to the Administrative Procedures Act. Okla.Stat. tit. 75, §§ 301–323 (1991). Section 306 authorizes an action for declaratory judgment to test the validity of an agency rule. Section 318 provides for judicial review of final agency orders. Section 328.43 of title 59 provides that an appeal from a disciplinary proceeding is in the district court. The Board argues Dr. Johnson is appealing an interlocutory order and, under these statutory provisions, the district court does not have jurisdiction until a final order issues.

■ Generally, a litigant must seek review of agency decisions in a manner prescribed by statute and cannot invoke the jurisdiction of the court in a separate proceeding. *Conoco, Inc. v. State Dep't of Health of the State of Oklahoma,* 651 P.2d 125, 129 (Okla.1982); *Martin v. Harrah Independent School District,* 543 P.2d 1370, 1377 (Okla.1976). An independent action is permitted where the judicial review of an agency decision "fails to provide an adequate remedy." *Martin,* 543 P.2d at 1375. Statutory procedures can be circumvented when there is a constitutional question, inadequate administrative relief, and threatened or impending irreparable injury. *Id.* "A district-court action is not abatable if the uninvoked administrative remedy was unavailable, ineffective or would have been futile to pursue." *Tinker Investment & Mortgage Corp. v. City of Midwest City,* 873 P.2d 1029, 1038 (Okla. 1994) (emphasis omitted).

■ Dr. Johnson has alleged a constitutional question in that the right to due process is a protection afforded by both the United States and the Oklahoma Constitutions. Due process "entitles a person to an impartial and disinterested tribunal in both civil and criminal" adjudicative proceedings. *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980); *Gibson v. Berryhill,* 411 U.S. 564, 578–79, 93 S.Ct. 1689, 1697–98, 36 L.Ed.2d 488 (1973). The lack of due process resulting from a biased tribunal cannot be corrected on appeal. *Ward v. Village of Monroeville, Ohio,* 409 U.S. 57, 61, 93 S.Ct. 80, 83–84, 34 L.Ed.2d 267 (1972). Likewise, a professional whose license is at stake is "entitled to be treated according to a previously established uniform system of published rules and regulations." *Adams v. Professional Practices Commission,* 524 P.2d 932, 934 (1974).

■ Dr. Johnson has also alleged inadequate administrative relief and irreparable injury. Dr. Johnson alleged the members of the Board were biased and proceeding without having properly enacted rules or the rules under which the Board was acting were void. There is little doubt an appearance before a biased tribunal will be ineffective and inadequate and is not authorized by law as the Board argues. An appellate review is inadequate to correct injury to a professional's reputation after a board has pronounced a negative decision. Because Dr. Johnson has alleged facts sufficient to justify circumventing statutory procedures, the district court's jurisdiction was correctly invoked.

Not only did the trial court have jurisdiction under the rule set out in *Martin,* 543 P.2d 1370, it also had jurisdiction under article 7, section 7 of the Oklahoma Constitution. Article 7, section 7 "vests in the district court *'unlimited original jurisdiction* of all justiciable matters ... and *such powers of review of administrative action as may be provided by statute.'*" *Lincoln Bank and Trust v. Oklahoma Tax Commission,* 827 P.2d 1314, 1318 (1992).

## IV. The standard of proof

■ The standard of proof is a matter of due process and serves "to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." *Addington v. Texas,* 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). The three standards of proof are (1) preponderance of the evidence, (2) clear-and-convincing evidence, and (3) beyond a reasonable doubt. *Id.* at 424, 99 S.Ct. at 1808. A preponderance of the evidence is generally the measurement used in private disputes, while beyond a reasonable doubt is generally the measurement used in criminal proceedings. *Id.* The application of the preponderance of the evidence standard requires the parties to equally share the risk of error. *Id.* at 423, 99 S.Ct. at 1807–1808.

■ The clear-and-convincing standard is employed "in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing by the defendant. The interest at stake in those cases is deemed to be more substantial than mere loss of money and some jurisdictions reduce the risk to the defendant of having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." *Id.* at 424, 99 S.Ct. at 1808.

■ This Court has consistently recognized "where it is necessary to procure a license in order to carry on a chosen profession or business, the power to revoke a license, once granted, and thus destroy in a measure the means of livelihood, is penal and therefore should be strictly construed." *State ex rel. Oklahoma State Board of Embalmers and Funeral Directors v. Guardian Funeral Home,* 429 P.2d 732, 733, 736 (Okla. 1967); *Board of Examiners of Veterinary Medicine v. Mohr,* 485 P.2d 235, 240 (Okla. 1971). The loss of a professional license is more than a monetary loss; it is a loss of a person's livelihood and loss of a reputation. Further, a dental license in Oklahoma is a constitutionally protected property interest which must be afforded due process. *See* Okla.Stat.Tit. 59, § 328.32 (1991); *Barry v. Barchi,* 443 U.S. 55, 64, 99 S.Ct. 2642, 2649, 61 L.Ed.2d 365 (1979); *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–700, 33 L.Ed.2d 570 (1972).

Because of the interest at stake in the loss of a license and the potential damage to a professional reputation resulting from disciplinary proceedings, this Court has recognized that the standard of proof in revocation proceedings against a person holding a professional license is a clear-and-convincing-evidence standard. *State ex rel. State Bd. of Official Shorthand Reporters v. Isbell,* 803 P.2d 1143 (Okla.1990); *State ex rel. Oklahoma Bar Association v. McMillian,* 770 P.2d 892, 895, n. 6 (Okla.1989).

In *Addington,* 441 U.S. at 424, 99 S.Ct. at 1808, the United States Supreme Court articulated a three part test to determine what burden of proof should be employed in a civil commitment proceeding. The Court balanced "the extent of the individual's interest" and "the state's interest" while being "mindful that the function of the legal process [was] to minimize the risk of erroneous decisions." Applying this test, the Court determined the preponderance-of-the-evidence

standard failed to sufficiently protect the defendant's interest and the beyond a reasonable doubt standard failed to protect the state's interest. The Court found that the clear-and-convincing standard struck the appropriate balance. Thus, the Court held that the clear-and-convincing-evidence-standard was constitutionally required in civil commitment proceedings. *Id.* at 433, 99 S.Ct. at 1813.

In the case at bar, as in *Addington,* the interest of the defendant are substantial. The defendant suffers the possible lost of a constitutionally protected property right, the loss of a livelihood, and the loss of a professional reputation. These losses are greater than monetary losses. *See Addington,* 441 U.S. at 424, 99 S.Ct. at 1808; *Santosky v. Kramer,* 455 U.S. 745, 756, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599 (1982). The state has an interest in the health, safety and welfare of its citizens. The third concern is the risk of error. There is high risk when an agency seeks to revoke a professional license. As in this case, revocation proceedings have the agency acting as investigator, prosecutor, and decision maker. The risk is increased where, as in this case, a competitor of the defendant serves as the investigator and makes prosecutorial recommendations to the Board. Balancing the interest of the individual against the interest of the state and taking into consideration the risk of an erroneous decision, due process requires the Board prove its case against Dr. Johnson by clear-and-convincing evidence.

■ The Board has enacted a rule establishing a preponderance of the evidence as the standard of proof in disciplinary proceedings before it. The dissent relies on the fact that thirty-nine medical boards require a preponderance of the evidence standard and only eighteen require clear and convincing evidence. "[M]inimum requirements of [due process] being a matter of federal law [cannot be] diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action." *Vitek v. Jones,* 445 U.S. 480, 491, 100 S.Ct. 1254, 1263, 63 L.Ed.2d 552 (1980); *Santosky,* 455 U.S. at 755, 102 S.Ct. at 1395–96. Although

there are times that we may look to other states for guidance, *see Burrows v. Burrows,* 886 P.2d 984, 988–89 (Okla.1994); *Busby v. Quail Creek Golf & Country Club,* 885 P.2d 1326, 1330–31 (Okla.1994), where federal constitutional issues are involved we generally look to the federal courts, and more specifically to the United States Supreme Court. *See In re C.J.S.,* 903 P.2d 304, 307–308 (1995); *Sharp v. Tulsa County Election,* 890 P.2d 836, 841–845 (1994); *McDonald v. Wrigley,* 870 P.2d 777, 780–781 (1994).

The Board relies on *Steadman v. SEC,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981). However, the Board's reliance is misplaced. In *Steadman,* the Court addressed whether the section 7(c), 5 U.S.C. § 556(d) required clear and convincing evidence in disciplinary proceedings before the Securities and Exchange Commission. *Steadman,* 450 U.S. at 97, 101 S.Ct. at 1005–1006. The Court specifically noted that the "Petitioner [made] no claim that the Federal Constitution require[d] application of a clear-and convincing-evidence standard." *Id.* at 97 n. 15, 101 S.Ct. at 1006 n. 15. Thus, the Court did not address whether the Federal Constitution required a clear-and-convincing standard in disciplinary proceedings before an administrative agency. It should be noted, the dissenters citing *Addington* and evaluating the three factors cited in *Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 909–10, 47 L.Ed.2d 18 (1976) would have addressed the federal constitutional requirements and held the agency to the clear-and-convincing standard.

■ The State of Oklahoma can afford greater due process safeguards than those provided by the Federal Constitution. *Michigan v. Long,* 463 U.S. 1032, 1037–42, 103 S.Ct. 3469, 3474–77, 77 L.Ed.2d 1201 (1983); *Messenger v. Messenger,* 827 P.2d 865, 872 (Okla.1992). Because of the penal nature of disciplinary proceedings involving a professional license, the Oklahoma Constitution requires that the clear-and-convincing standard be applied in such disciplinary proceedings. In applying state standards to the issue of burden of proof in administrative disciplinary proceedings, this Court has previously determined the appropriate standard

to be clear-and-convincing evidence. *Isbell,* 803 P.2d at 1144; *McMillian,* 770 P.2d at 898–99.

■ As stated, constitutional due process requires the standard of proof in disciplinary proceedings against a person holding a professional license to be clear and convincing. The Board's rule does not comply with federal or state minimum constitutional due process requirements and is invalid. Because we find the preponderance of the evidence standard constitutionally inadequate, we need not address the procedure under which it was enacted.

## V. Duty to enact rules

■ Dr. Johnson argues the Board is required to enact rules establishing guidelines for the imposition of disciplinary actions. Dr. Johnson relies on section 302(A)(2) of title 75 which requires each agency to "adopt rules of practice setting forth the nature and requirements of all formal and informal procedures available." Dr. Johnson incorrectly interprets this statute as requiring the Board to establish guidelines before imposing discipline on a licensed dentist.

■ Section 328.32 of title 59 gives the Board the power to revoke or suspend the license of a dentist, to place a dentist on probation, or to issue a public or private reprimand. Unlike section 302 of title 75, which requires the Board to enact rules relating to procedure, section 328.32 gives the Board discretion in determining the appropriate discipline. To the extent the discipline is not arbitrary or capricious, within the law, and supported by the facts, the decision as to what discipline is proper is within the discretion of the Board. *See Robinson v. United States,* 718 F.2d 336 (10th Cir.1983).

Dr. Johnson also argues due process requires the Board to enact rules establishing disciplinary guidelines that are uniform. The United States Supreme Court has rejected the argument that sanctions must be uniform. In *Butz v. Glover Livestock Commission Company, Inc.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), the petitioner, the Secretary of Agriculture, had issued a cease and desist order against the Glover Livestock Commission Company. The Commission Company argued the sanction was improper because the sanction was more severe than imposed in other cases. *Id.* at 187, 93 S.Ct. at 1458–59. The Court recognized Congress had given the Secretary of Agriculture wide discretion in determining the appropriate sanction and found the sanction was within the Secretary's statutory authority. *Id.* at 187–88, 93 S.Ct. at 1458–59. The Court then reviewed the sanction to determine if the sanction was justified in fact. Finding authority in the law and justification in fact for the sanction, the Court held the Secretary had not abused his discretion. *Id.* at 188, 93 S.Ct. at 1459.

■ In this case like in *Butz,* the lawmaking body has given the Board wide discretion in determining the appropriate sanction. Okla.Stat. tit. 59, § 328.32 (1991). If the sanction is within the Board's statutory authority and is justified in fact so as not to be arbitrary or capricious, then the sanction does not violate due process. Further, the Board is not required to predetermine the range of sanctions applicable to a particular offense. *See American Power & Light v. Securities & Exchange Commission,* 329 U.S. 90, 112, 67 S.Ct. 133, 145–46, 91 L.Ed. 103 (1946).

## VI. Disqualification of the Board including the Investigatory Officer

### A. The Board

■ The decision as to whether the Board members and the investigatory officer should be disqualified will not be reversed on appeal absent a clear abuse of discretion. *See Osage Implement Co. v. Bottrell,* 363 P.2d 940 (Okla.1961). In this case, the trial judge did not abuse his discretion.

■ This Court has consistently held and due process requires every litigant receive a decision that is the result of "the cold neutrality of an impartial judge." *Sadberry v. Wilson,* 441 P.2d 381, 382, 384 (Okla.1968); *Craig v. Walker,* 824 P.2d 1131, 1132 (Okla. 1992). Likewise, the Oklahoma Statutes require an agency member to "withdraw from any individual proceeding in which [the member] cannot accord a fair and impartial hear-

ing or consideration." Okla.Stat. tit. 75, § 316 (1991). "When circumstances and conditions surrounding litigation are of such a nature that they might cast doubt and question as to the impartiality of any judgment the trial judge may pronounce, said judge should certify his disqualification." *Sadberry*, 441 P.2d at 384 (quoting *Callaham v. Childers*, 186 Okla. 504, 99 P.2d 126, 128 (1940)). This is an objective standard and is not dependent on the judge's belief. *Merritt v. Hunter*, 575 P.2d 623, 624 (Okla.1978).

█ In *Merritt*, the respondent judge traveled to Kansas to testify in a hearing involving at least one of the parties who was appearing in a matter before him. In holding the judge had abused his discretion by not disqualifying himself, this Court stated:

Although we do not doubt Respondent's good intentions in making such an appearance in the Kansas Court, we have consistently held that even though a judge personally believes himself to be unprejudiced, unbiased and impartial, [that judge] should [enter a disqualification] where there are circumstances of such a nature to cause doubt as to his partiality, bias or prejudice.

*Id.* This rule applies equally to administrative boards acting in an adjudicatory capacity as it does to judges. *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973).

The evidentiary material presented in the trial court shows the Board abdicated its decision-making responsibilities to Dr. Farley rather than examining the allegations and coming to a conclusion of its own. The Board allowed Dr. Farley to make decisions beyond his authority. Among other things the Board allowed Dr. Farley to issue the formal complaint without action by the Board and to determine the hearing dates. Later, the Board set a disciplinary hearing in violation of an injunction by the district court. These actions were in violation of the statutes, Board rules, and a court order.

█ Dr. Johnson argues the Board should have automatically disqualified itself from hearing the case against him when it was named as a defendant in the actions he filed against it. Under this argument, any time a litigant is unhappy with a judge's decision that litigant could file an action against the judge and the judge would be disqualified. While we cannot agree such a situation results in automatic disqualification, it is a factor which might reflect on the appearance of bias by the Board. Taking into consideration all of the evidentiary material before the trial judge, we cannot say he abused his discretion in disqualifying the Board from hearing the proceedings against Dr. Johnson.

**B. The Investigatory Officer**

█ Although Dr. Farley is prohibited by the Board's own rule from sitting as an adjudicator during the hearing, Board of Governors of Registered Dentists Rule 195:3–1–2(b) (1992), he investigated the allegations, made recommendations to the Board, and in fact made decisions that were within the Board's providence, and ruled on prehearing motions. As Investigatory Officer, Dr. Farley was required to "determine all issues of procedure and motions prior to the actual commencement of the hearing before the Board...." *Id.* at Rule 195:3–1–2(e). Being in the same geographical region, Dr. Farley is a competitor, albeit not a close competitor, of Dr. Johnson and thus has a pecuniary interest in the outcome of the proceedings.

█ It is presumed someone who has a financial interest in the outcome of a decision, even a pretrial decision, cannot render a decision with "the cold neutrality of an impartial judge." In *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), the United States Supreme Court held, because of a pecuniary interest in the decision, the mayor of the town, who was responsible for the town's finances which were derived in part from fines, was not an impartial judge as required by the Due Process Clause of the United States Constitution to adjudicate matters which would result in a fine. The nexus in this case is even less attenuated than the nexus in *Ward.* The Board most likely recognized the conflict when it exempted the investigatory officer who was from the same district as the subject of the investigation from sitting as an adjudicator. Because of his pecuniary interest in the outcome, Dr. Farley should not act as an adjudicator even on pretrial motions.

While the same strict requirements applicable to adjudicators do not apply to administrative prosecutors, serious due process implications arise when the investigator and prosecutor have a personal financial interest in the outcome of the proceedings. *Marshall,* 446 U.S. at 250, 100 S.Ct. at 1617. As the trial judge noted, these constitutional ramifications could easily be avoided by selecting an investigatory and prosecutorial officer from a different region than the subject of the investigation. Therefore, the trial court did not abuse its discretion in disqualifying Dr. Farley from the proceedings as an investigator, prosecutor, and hearing officer on pretrial motions.

## VII.  Conclusion

We hold: (1) the trial court had jurisdiction over this matter, (2) the Board was not statutorily required to promulgate rules establishing disciplinary guidelines, (3) the proper standard of proof in disciplinary proceedings involving a person who holds a professional license is clear and convincing, and (4) the trial court was acting within its discretion when it ordered the members of the Board, including Dr. Farley, disqualified. The judgment of the trial court is affirmed in part and reversed in part. The cause is remanded with instructions for the trial court to enter judgment consistent with this opinion.

TRIAL COURT'S JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CAUSE REMANDED WITH INSTRUCTIONS.

ALMA WILSON, C.J., KAUGER, V.C.J. and SIMMS, HARGRAVE and OPALA, JJ., concur.

LAVENDER, SUMMERS and WATT, JJ., concur in part, dissent in part.

OPALA, Justice, with whom KAUGER, Vice Chief Justice, joins, concurring.

Today's pronouncement holds that the Board of Governors of Registered Dentists of the State of Oklahoma [Board] must prove *by clear and convincing evidence* any disciplinary complaints it brings against the professionals who are subject to its cognizance.  *I join the court's opinion* but write separately to explain my commitment to maintaining the clear-and-convincing standard of persuasion in disciplinary proceedings against dentists.

### I

### THE ANATOMY OF LITIGATION

The Board instituted disciplinary proceedings against Charles Ray Johnson, D.M.D. [Johnson or dentist] based upon an investigation conducted by a board-appointed "investigatory officer."[1]  After receipt of the complaint, Johnson sought to enjoin the disciplinary proceedings by a district court decree.  Among other things, he asserted that the Board had failed to designate *the standard of persuasion* required to prove the charges brought against him.  After Johnson began his district court action (but before any formal disciplinary hearings were had), the Board adopted—on an emergency basis—the preponderance-of-the-evidence standard of persuasion[2] to govern its disciplinary proceedings.  Johnson urged that the proper standard is that of clear-and-convincing evidence.  By its September 17, 1993 judgment the district court ruled that due process requires clear-and-convincing proof in any proceedings which affect a dentist's license to practice.  The Board appealed and Johnson brought a counter-appeal.

### II

### SEVERAL IMPORTANT PROFESSIONAL AND PERSONAL–STATUS INTERESTS ARE PRESENTLY PROTECTED BY THE CLEAR–AND–CONVINCING STANDARD OF PERSUASION

Our concern here is not whether Johnson should be *initially licensed* for the practice

---

**1.** The appointed investigatory officer is a dentist who practices in the district in which the complaints arose and is one of Johnson's competitors.  For a discussion of the neutrality-and-detachment requirements that apply to professional board membership, see *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

**2.** For a discussion of this standard of proof, see *infra* note 14.

of dentistry but rather to define the standard of persuasion[3] that is to govern in proceedings *which affect his conferred license*.[4] In the latter process Johnson's stake is different from that in the former. It takes the shape of a constitutionally protected *property interest* which may not be revoked *sans* procedural due process. A person's professional license no longer may be treated as a *mere privilege*—something the King [government] may both create and take away at will.[5]

Both federal and Oklahoma's extant jurisprudence protect holders of various professional licenses and personal-status interests whenever the individual's interest at stake represents something more substantial than mere loss of money.[6] Clear and convincing evidence is required to affect a shorthand reporter's license.[7] The Bar Association must prove a lawyer's violation of professional responsibility by clear and convincing evidence as a precondition to imposition of discipline.[8] Parental status may not be ter-

---

**3.** For many years the term "burden of proof" was ambiguous, because it was used to describe two distinct concepts. It was frequently used to refer to what is now called the *burden of persuasion*—the notion that if the evidence is evenly balanced, the party that bears the burden of persuasion must lose. The term was *also used* to refer to what is now called the *burden of production*—a party's obligation to come forward with evidence to support its claim. *Director, OWCP v. Greenwich Collieries*, —— U.S. ——, —— 114 S.Ct. 2251, 2255–2256, 129 L.Ed.2d 221 (1994) (citing J. Thayer, Evidence at the Common Law 355–384 (1898) (detailing various uses of the term *burden of proof* among 19th–century English and American courts). *See also* 2 L. Whinery, OKLAHOMA EVIDENCE §§ 8.01–8.06 (2d ed. 1994), for an additional discussion of the distinctions between these two concepts.

The U.S. Supreme Court noted in 1923 that the distinction between "the burden of proof" and "the necessity of producing evidence to meet that already produced ... is now very generally accepted, although often blurred by careless speech." *Hill v. Smith*, 260 U.S. 592, 594, 43 S.Ct. 219, 220, 67 L.Ed. 419 (1923). In the two decades after *Hill*, U.S. Supreme Court jurisprudence consistently distinguished between *burden of proof*, which it defined as *burden of persuasion*, and *burden of production* (or the burden of going forward with the evidence). *Greenwich*, *supra* at ——, 114 S.Ct. at 2256. During the same period the U.S. Courts of Appeals also limited the meaning of burden of proof to burden of persuasion, and explicitly distinguished this concept from the burden of production. *Greenwich*, *supra* at ——, 114 S.Ct. at 2256, n. * * * (citing *Lee v. State Bank & Trust Co.*, 38 F.2d 45, 48 (2d Cir.1930); *Commissioner v. Bain Peanut Co.*, 134 F.2d 853, 860, n. 2 (5th Cir.1943).

**4.** For a general discussion of the burden-of-proof concept and its associated probability components, see McBaine, *Burden of Proof: Degrees of Belief*, 32 Cal.L.Rev. 242–268 (1944). *See also* 2 L. Whinery, OKLAHOMA EVIDENCE §§ 8.20–8.23 (2d ed. 1994).

**5.** *See Wolfenbarger v. Hennessee*, Okl., 520 P.2d 809, 811 (1974); *Whittle v. State Bd. of Examiners of Psychologists*, Okl., 483 P.2d 328, 329 (1971); *State v. Wood*, 207 Okla. 193, 248 P.2d 612, 615 (1952). *See also Willner v. Committee on Character and Fitness*, 373 U.S. 96, 102, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224 (1963).

Common-law *rights* arose *ex debito justitiae*, *i.e.*, out of a debt of justice, while privileges were born *ex gratia regis*, *i.e.*, as a grace, favor or indulgence of the sovereign. Rights were interests over which the King held investitive, but not divestitive, powers. Over privilege the King held *both* investitive and divestitive control. The common-law right/privilege dichotomy has been rejected by modern federal jurisprudence as no longer determinative of whether procedural due process is to be available. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). *See also* Van Alstyne, *The Demise of the Right–Privilege Distinction in Constitutional Law*, 81 HARV.L.REV. 1439 (1968); Smolla, *The Reemergence of the Right–Privilege Distinction in Constitutional Law: The Price of Protesting Too Much*, 35 STAN.L.REV. 69 (1982).

**6.** *See Ross v. Peters*, Okl., 846 P.2d 1107, 1118–19 (1993); *Addington v. Texas*, 441 U.S. 418, 424–425, 431–432, 99 S.Ct. 1804, 1808–1809, 1812–1813, 60 L.Ed.2d 323 (1979).

**7.** *Bd. of Official Shorthand Rep. v. Isbell*, Okl., 803 P.2d 1143, 1144 (1990).

**8.** *Oklahoma Bar Ass'n v. McMillian*, Okl., 770 P.2d 892, 894 (1989). *See also* Rule 6.12, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, which provides in pertinent part:

"... (c) To warrant a finding against the respondent in a contested case, the charge or charges must be established by *clear and convincing evidence*, and at least two of the members of the Trial Panel must concur in the findings."
[Emphasis mine.]
*See also State ex rel. Oklahoma Bar Ass'n v. Farrant*, Okl., 867 P.2d 1279, 1283 (1994); *State ex rel. Oklahoma Bar Ass'n v. Gasaway*, Okl., 810 P.2d 826, 830 (1991); *State ex rel. Oklahoma Bar*

minated except by clear and convincing proof.[9] The existence of an unsolemnized, non-ceremonial (common law) marriage must be established by clear and convincing proof.[10]

## III

### ARTICLE 5, § 46 [11] AND THE DUE PROCESS CLAUSE [12] INTERDICT DISPARATE PROCEDURAL REGIMES FOR LICENSE REVOCATION AFFECTING SIMILARLY SITUATED PROFESSIONALS

Academically credentialed and governmentally licensed professionals constitute, for remedial purposes, but a single class.[13] Johnson—as a dentist—is a member of this class. To withhold from dentists the protection affordable by the clear-and-convincing standard of persuasion [14] would destroy the symmetry of our present procedural regime. Its uniformity is commanded by Art. 5, § 46, Okl. Const.[15] Apart from the strictures of § 46, due process, both state and federal, which has a vigorous anti-discrimination component, also demands that academically credentialed and state licensed professionals—who comprise a single class—be accorded the same probative standards when proceeded against by the State acting in the exercise of its policing powers.[16]

The Board's adoption of the preponderance-of-the-evidence standard,[17] if allowed to survive this court's scrutiny, would impermissibly interject procedural asymmetry into the process that governs license revocation.

Ass'n v. Braswell, Okl., 663 P.2d 1228, 1232 (1983).

9. *Matter of C.G.*, Okl., 637 P.2d 66, 69 (1981); *Matter of Adoption of Darren Todd H.*, Okl., 615 P.2d 287, 288 (1980). *See also Santosky v. Kramer*, 455 U.S. 745, 748, 102 S.Ct. 1388, 1391–92, 71 L.Ed.2d 599 (1982).

10. *Matter of Estate of Stinchcomb*, Okl., 674 P.2d 26, 29 (1983).

11. The terms of Art. 5 § 46, Okl. Const., state in pertinent part:
    "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
        \*    \*    \*    \*    \*    \*
    *Regulating the practice or jurisdiction of . . . in judicial proceedings or inquiry before the courts . . . or other tribunals . . . .*" [Emphasis supplied.]
    *See Reynolds v. Porter*, Okl., 760 P.2d 816, 822 (1988); *Maule v. Independent School Dist. No. 9.*, Okl., 714 P.2d 198, 203–204 (1986).

12. The terms of Art. 2, § 7, Okl. Const., state:
    "No person shall be deprived of life, liberty, or property, without due process of law."

13. *See State ex rel. State Bd., etc v. Naifeh*, Okl., 598 P.2d 225, 226 (1979) (Opala, J., dissenting), for a discussion of constitutional norms that demand remedial equality for *all* disciplinary proceedings which affect professionally credentialed and state certified licensees.

14. For a discussion of the clear-and-convincing standard of proof, see *Addington, supra* note 6, 441 U.S. at 424–425, 431–432, 99 S.Ct. at 1808–1809, 1812–1813, (in civil commitment proceedings a *clear-and-convincing* standard of proof is required to meet due process demands). *Adding-*

*ton* observes there are three standards (or levels) of proof—*i.e.*, beyond a reasonable doubt, clear and convincing and preponderance of the evidence. The intermediate standard of *clear and convincing* evidence, which serves to protect important individual interests in civil cases, reduces the risk of error by increasing the plaintiff's burden of persuasion. *Id.*, 441 U.S. at 424, 99 S.Ct. at 1808; *see also Dacey v. Connecticut Bar Association*, 170 Conn. 520, 368 A.2d 125, 133–34 (1976). It is distinguishable (a) from the higher, beyond-a-reasonable-doubt standard (a doubt that would make a reasonable person hesitate to act in graver and more important life affairs but would not exclude *all* possible doubt), and (b) from the lower, preponderance-of-the-evidence standard, which requires the litigants to share the risk of error *in a roughly equal fashion*. *Id.* [preponderance calls for making one's claim or affirmative defense appear *"more probably true than not." Midland Valley R. Co. v. Barnes*, 162 Okl. 44, 18 P.2d 1089, 1092 (1933).] *See also* T. Anderson and W. Twining, ANALYSIS OF EVIDENCE 363–66 (1991).

15. *Brown v. Ford*, Okl., 905 P.2d 223, 228 (1995); *Simpson v. Dixon*, Okl., 853 P.2d 176, 183 (1993); *Tate v. Browning–Ferris, Inc.*, Okl., 833 P.2d 1218, 1229 (1992); *Reynolds, supra* note 11 at 822; *Johnson v. District Court of Oklahoma County*, Okl., 738 P.2d 151, 154 (1987) (Opala, J., concurring).

16. *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Naifeh, supra* note 13 at 21; *McKeever Drilling Co. v. Egbert*, 170 Okl. 259, 40 P.2d 32, 36 (1935).

17. For a discussion of the preponderance-of-the-evidence standard of persuasion, see *supra* note 14.

Other similarly situated professional licensees have already been given the protection of the clear-and-convincing standard. Both the remedial uniformity commanded by § 46 and the due process clause compel today's holding that the clear-and-convincing standard of persuasion stand as the dentists' constitutional due.

## IV

### SUMMARY

As an academically credentialed and governmentally certified dental practitioner, Johnson holds a state license that is to be treated as a constitutionally protectible property interest. It may not be suspended or revoked *sans* procedural due process. The degree of persuasion that is to govern a license-revocation proceeding constitutes *a critical component of that process.* Johnson is entitled to expect from the State no less probative persuasion than that accorded by law to similarly situated licensees. The Board's endorsement of a lesser standard— that of preponderance of the evidence— plainly offends the constitutionally mandated symmetry of procedure. Art. 5, § 46 and Art. 2, § 7, Okl. Const.

SUMMERS, Justice, dissenting in part to the denial of rehearing (concurring in part and dissenting in part to the opinion) with whom LAVENDER and WATT, Justices, join.

My only disagreement with the opinion is in its requirement that the burden of proof on dental license revocation must be by evidence that is clear and convincing rather than by a preponderance of the evidence, as had been provided by the Dental Board of Governors. I believe the Court errs in holding that clear and convincing evidence is *constitutionally* required before the license of a professional can be revoked. In my opinion the higher standard is not required by either the Due Process Clause or the Equal Protection Clause.

The majority opinion holds that failure to use the clear and convincing standard is a violation of due process. It cites as support for the "clear and convincing standard" cases involving licensed professionals in the judicial rather than the executive branch. *State Bd. of Official Shorthand Reporters v. Isbell,* 803 P.2d 1143 (Okla.1990); *State ex rel. Oklahoma Bar Association v. McMillian,* 770 P.2d 892 (Okla.1989). The Board, on the other hand, cites the United States Supreme Court case of *Steadman v. SEC,* 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), which held that the appropriate standard of proof in a federal administrative disciplinary action is preponderance of the evidence. In this type of situation the Supreme Court has held due process requires a weighing of the private and public interests affected. *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The Board urges that the Legislature has flexibility in regulating professions for the protection of the public health and safety. In regulating other medical professions the legislature has set the standard of proof at preponderance of the evidence. *See* 59 O.S. 1991 § 1370.

The intermediate standard of proof—clear and convincing evidence—is generally used when there are allegations of fraud or some type of quasi-criminal wrongdoing. "The interests at stake in those cases are deemed to be more substantial than mere loss of money and some jurisdictions accordingly reduce risk to the defendant having his reputation tarnished erroneously by increasing the plaintiff's burden of proof." *Addington v. Texas,* 441 U.S. 418, 424, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). This standard has been used sparingly by the Supreme Court, and generally in cases involving deportation and denaturalization. *Woodby v. INS,* 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966); *Chaunt v. United States,* 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960).

The Supreme Court, relying on *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), enunciated the three interests to be considered and weighed in deciding which standard of proof is constitutionally required: (1) assessment of the individual interests at stake, (2) assessment of the state's interest and (3) the risk of erroneous decisions. The greater the individual's interest, the greater the state's

must be to justify a lower standard of proof.

In *Steadman v. Securities & Exch. Comm'n*, 450 U.S. 91, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), the Supreme Court upheld the "preponderance of the evidence" standard when used by the securities and exchange commission to discipline a securities broker. The broker challenged the use of the "preponderance of the evidence" standard because of the severe sanctions involved. Importantly, the Court began its analysis by noting that absent a constitutional restraint, the judiciary should defer to the "traditional powers of Congress to prescribe rules of evidence and standards of.proof...." *Id.* The Supreme Court held that the Federal Administrative Procedure Act required only a preponderance of the evidence, and that such a standard was acceptable.

While the Supreme Court has not directly addressed the standard required for a professional license revocation, many of our sister jurisdictions have. Thirty-nine state medical boards profess to use the preponderance of the evidence standard for all offenses, eighteen use the clear and convincing standard for all offenses, and four use some variation of standards. Table 42 of Review and Disciplinary Function, *Exchange* Federation of State Medical Boards (1995)[1]; *A Resource Guide for Responding To Attempts to Weaken State Medical Licensing Boards by Legislating a Higher Standard of Evidence*, Citizen Advocacy Center, Swank and Cohen (1992). The obvious favorite is the preponderance of the evidence standard. The standard recommended by the Federation of State Medical Boards, an organization whose goal is to aid and support doctors and their review boards, is the preponderance of the evidence. *Federation of State Medical Boards Handbook*, at p. 4.

A majority of other states have upheld the preponderance of the evidence standard as constitutional. *Swiller v. Commissioner of Public Health & Addiction Serv.*, 1995 W.L. 611754 (Conn. October 5, 1995) (chiropractor); *Sobel v. Bd. of Pharmacy*, 130 Or.App. 374, 882 P.2d 606 (1994) (pharmacist); *Pickett v. Utah Dept. of Commerce*, 858 P.2d 187 (Utah Ct.App.1993) (pharmacist); *Petition of Grimm*, 138 N.H. 42, 635 A.2d 456 (1993) (psychologist); *Gandhi v. Medical Examining Bd.*, 168 Wis.2d 299, 483 N.W.2d 295 (1992) (physician); *Eaves v. Bd. of Med. Examiners*, 467 N.W.2d 234 (Iowa 1991) (physician); *Johnson v. Arkansas Bd. of Examiners of Psychology*, 305 Ark. 451, 808 S.W.2d 766 (1991) (psychologist); *Lyness v. Commonwealth, State Bd. of Medicine*, 127 Pa. Cmwlth. 225, 561 A.2d 362 (1989) (physician); *Foster v. Bd. of Dentistry*, 103 N.M. 776, 714 P.2d 580 (1986) (dentist); *Thangavelu v. Dept of Licensing & Regulation*, 149 Mich. App. 546, 386 N.W.2d 584 (1986) (physician); *Matter of Proposed Disciplinary Action Against Dentist License of Roger W. Schultz*, 375 N.W.2d 509 (Minn.Ct.App.1985) (dentist); *Rucker v. Michigan Bd. of Medicine*, 138 Mich.App. 209, 360 N.W.2d 154 (1984) (physician); *In re Polk*, 90 N.J. 550, 449 A.2d 7 (1982) (physician); *Sherman v. Commission on Licensure to Practice the Healing Art*, 407 A.2d 595 (D.C.Ct.App.1979) (physician).[2] Several other states have noted and stayed with the preponderance of the evidence standard in the absence of a constitutional challenge. *Golan v. Sobol*, 195 A.D.2d 634, 599 N.Y.S.2d 752 (3d Dept.1993) (doctor); *Matter of the Disciplinary Action Against the Dentist License of Wang*, 441 N.W.2d 488 (Minn. 1989) (dentist); *Ferguson v. Hamrick*, 388 So.2d 981 (Ala.1980) (doctor); *In re Kincheloe*, 272 N.C. 116, 157 S.E.2d 833 (1967) (doctor); *Texas State Board of Medical Examiners v. Haynes*, 388 S.W.2d 258 (Tex.Civ. App.1965) (doctor).

---

**1.** These numbers add up to a number greater than fifty. The explanation for this number is that many states have more than one medical review board. For instance, many have separate review boards for medical doctors and osteopathic doctors.

**2.** My research located only four states which have struck down the "preponderance of the

evidence" standard. *Mississippi State Bd. of Nursing v. Wilson*, 624 So.2d 485 (Miss.1993); *Devous v. Wyoming State Bd. of Med. Examiners*, 845 p.2d 408 (Wyoming 1993); *Davis v. Wright*, 243 Neb. 931, 503 N.W.2d 814 (1993); *Ettinger v. Board of Med. Quality Assurance*, 135 Cal. App.3d 853, 185 Cal.Rptr. 601 (Ct.App.1982).

Three cases are particularly enlightening. In *Gandhi, supra,* the Wisconsin Medical Board adopted the preponderance of the evidence standard. Gandhi, a physician, argued that the standard was violative of his constitutional guarantees to due process and equal protection. He urged that the nature of his interest—his professional license—warranted greater protection than the preponderance of the evidence standard provided. He also argued that using a lesser standard, when attorneys may only be disciplined upon a showing by clear and convincing evidence, violated his rights of equal protection.

The Wisconsin court disagreed. Relying on the three-part test used by the United States Supreme Court, the court weighed the interests of the individual and the state. The individual's interest was substantial and the potential deprivation of a professional license is of great consequence. This deprivation was tempered by the fact that once revoked a license may be again granted upon a showing that the individual is competent and fit to practice medicine.

The state's interest was also substantial. The state has a strong interest as well as an obligation to protect the health, safety and welfare of its citizens. The wrongdoing of a physician can threaten life itself. The court believed that "the obligation of the state is superior to the privilege of any individual to practice his or her profession." *Id.* at 299. "The private interest of a physician to practice medicine is not a right: it is a privilege." *Id.* at 300.

As for the third factor, the court looked to the reviewing panel in a medical licensure revocation. The panel, being also the fact finders, consisted mostly of physicians. Thus they are trained and experienced in the particular profession. This minimized the risk of error. Furthermore, the Wisconsin statutes provided safeguards for a doctor faced with disciplinary proceedings. The Wisconsin court concluded that due process was not offended by the use of the preponderance of the evidence standard.

*In re Polk* addressed similar arguments, and through similar reasoning, the New Jersey Court reached the same results. *Polk* pointed out that the legislature must be left to do what the constitution permits it to do—enact laws for the well-being of its citizens. Unless the laws are unconstitutional they should be upheld. Although there is an argument that the medical profession would be better served by a higher burden of proof, the statute requiring only a preponderance of the evidence was upheld, as it was not constitutionally infirm. *Id.* at 12.

In *Petition of Grimm,* 138 N.H. 42, 635 A.2d 456 (1993), the New Hampshire Supreme Court addressed the issue of which standard of proof should be used in a license revocation involving a licensed psychologist. The court held that *"the state is free to treat professions differently according to the needs of the public in relation to each, particularly where, as here, the regulations being compared have been created by separate branches of government...."* (emphasis mine) Although an attorney license revocation in New Hampshire required clear and convincing evidence, public interest required that a revocation of a license of a psychologist be held to a lower standard of proof. Unlike an attorney whose professional behavior is generally on display in a courtroom, in front of opposing counsel, or well-documented by a paper trail, a medical/psychological professional generally conducts his or her practice in private with no other witnesses but the patient. Thus, the quantity of proof may be less available when dealing with a medical professional than with an attorney.

*In the present case, the Board adopted the preponderance of the evidence standard. Under the reasoning of the Supreme Court in Mathews v. Eldridge and a majority of our sister jurisdictions, this standard is constitutionally permissible.* Johnson's interest in practicing dentistry is substantial, but so is the interest of the state in safeguarding the health of its citizens. The review board is made up of practicing dentists, and it has seen fit to govern its own by requiring only a preponderance of the evidence. By adopting this standard, the Board made an implicit determination that the risk of error should be equally borne by both the dentist and the public. *See Disciplinary Matter Involving Walton,* 676 P.2d 1078, 1085 (Alaska 1983) (attorney could be disciplined by preponder-

ance of the evidence since there were substantial interests on both sides and the risk should be equally borne).

The majority reaches a different result, mainly relying on this third factor—risk of error. The majority asserts that risk of error is great, where as here, the investigator was a competitor of Johnson. But the opinion goes on to hold that it was error to permit a competitor to investigate. Thus the majority opinion does away with any concern because of the investigator.

In my opinion the risk of error should be equally allotted. The Board which reviews the licenses of dentists is made up of dentists. While seeking to maintain the integrity of their profession, its members are also in a position to empathize with the dentist who is disciplined. The protection of the public in these proceedings is equally important. The Board itself recognized both the public's interest and the dentist's interest in adopting the preponderance of the evidence standard. The majority opinion downplays the interest of the individual seeking dental treatment.

There is no constitutional requirement that licensees of all professions be governed by identical norms, and as stated in *Heller v. Doe,* 509 U.S. 312, ——, 113 S.Ct. 2637, 2646, 125 L.Ed.2d 257 (1993), "states are not required to convince the courts of the correctness of their legislative judgments." [3] I fear the Court today has impermissibly substituted its judgment for that of the Board.

The majority opinion seems concerned that a different standard is used for attorney discipline. It implies that this may run afoul of the Equal Protection Clause. First, I note that equal protection analysis begins with a determination of whether a fundamental right or a suspect class is involved. Here we have neither. Practicing a licensed profession is a privilege, not an absolute right. *Sherman,* 407 A.2d at 601; *Gandhi,* 483 N.W.2d at 300. "[A] classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller,* at ——, 113 S.Ct. at 2642. The classification is permissi-

ble if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Id.; Nordlinger v. Hahn,* 505 U.S. 1, 8–10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992).

There is a rational relationship between the difference in the treatment of dentists and attorneys. First, and foremost, the governing bodies of each have chosen different standards. The Board of Governors chose the "preponderance of the evidence" standard. The Oklahoma Supreme Court, the governing body for the Oklahoma Bar Association, chose to utilize the "clear and convincing" standard. As noted by other states, there is no constitutional requirement that this higher standard be utilized for attorney discipline. *See, e.g., Disciplinary Matter Involving Walton,* 676 P.2d 1078 (Alaska 1983) (using the three part balancing test of *Mathews,* only a "preponderance of the evidence" is required to discipline an attorney); *McInnis v. State,* 618 S.W.2d 389 (Tx.Ct.Civ.App. 1981) (attorney disciplined by "preponderance of the evidence" standard). As the Connecticut Superior Court pointed out, many jurisdictions adopted the "clear and convincing" standard for attorneys because it was suggested by the American Bar Association. However, as noted above, the Federation for State Medical Boards recommended that "preponderance of the evidence" be used.

A second rational basis for the distinction is the generally acknowledged differences in the type of interest affected by the professions. Licensed medical professionals have a direct and immediate impact on the health and well-being of patients. Whereas attorneys frequently have the opportunity to amend pleadings or other writings having legal import, a great many medical procedures are irreversible once accomplished. See *Swiller, supra.* A different standard is clearly supported under the rational basis test, and does not run contrary to the Equal Protection Clause.

**3.** Quoting *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981).

Finally, I point out the far-reaching ramifications of this decision. While this case involves a dentist, its holding will presumably extend beyond the dental profession to other licensed professions in Oklahoma. A cursory examination of Oklahoma law shows that at least thirty-seven professions, ranging from plumbers, foresters, electricians and barbers to physical therapists and embalmers, could be implicated. At least eight of these have adopted the Oklahoma Administrative Procedures Act. If interpreted similarly to the Federal Administrative Procedures Act, our OAPA requires only a "preponderance of the evidence" for a license revocation. *See Steadman*, 450 U.S. at 102, 101 S.Ct. at 1008. The validity of the OAPA, 75 O.S.1991 § 322, will likely thus be called into question.[4] While contemplation of these far-reaching consequences will not deter us from holding a statute unconstitutional, I find no constitutional necessity to override the Dental Board's choice of standards.

4. There is presently legislation pending which expressly would require only a preponderance of the evidence for disciplinary proceedings involving the holders of licenses. This legislation, which clarifies our OAPA, would presumably be unconstitutional under the majority opinion.