Rel: February 14, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0228

_____

**Ronald Dean Pinson**

**v.**

**Chilton County Board of Education**

**Appeal from Chilton Circuit Court**
**(CV-24-900003)**

FRIDY, Judge.

Ronald Dean Pinson appeals from a judgment of the Chilton Circuit Court ("the circuit court"), that upheld the decision of the Chilton County Board of Education ("the board") to cancel his contract to serve as principal of Chilton County High School ("the high school") and that

denied his request for reinstatement as the principal of the high school. For the reasons set forth herein, we affirm the judgment.

Background

In December 2023, Chilton County School Superintendent Corey Clements recommended that the board cancel Pinson's employment contract on the grounds that Pinson had failed to perform his duties in a satisfactory manner or for other good and just cause. At its December 18, 2023, meeting, the board voted to cancel Pinson's contract.

On December 21, 2023, Pinson mailed a letter to the board and Clements requesting an expedited nonjury evidentiary hearing to determine whether the termination of his employment was solely for cause, as permitted by § 16-24B-3(e)(2)b., Ala. Code 1975, a section of the Teacher Accountability Act ("the Act"), §16-24B-1 et seq., Ala. Code 1975. Pursuant to the Act, on January 5, 2024, the board filed a request in the circuit court for an expedited nonjury evidentiary hearing, reminding the circuit court that such hearings must be held within forty-five days of the board's request. See § 16-24B-3(e)(3), Ala. Code 1975.

On January 26, 2024, Pinson filed a motion in the circuit court requesting that he be reinstated as principal. On February 19, 2024, two

days before the hearing, he filed an amended request for reinstatement, saying for the first time that, because Clements had not evaluated him, his contract was extended for one year pursuant to § 16-24B-3(m).[1] The circuit court did not permit the parties to make arguments or submit evidence pertaining to that issue at the hearing.

The circuit court scheduled the hearing for Wednesday, February 21, 2024, two days beyond the forty-five-day window. On February 6, 2024, Pinson notified the circuit court that the hearing was set for the forty-seventh day after the board's request. In the notice, Pinson stated that the Act was silent as to the consequences of failure to hear the case within forty-five days but that he wanted to ensure that the court was aware of the issue. Despite Pinson's notice, the circuit court went forward with the hearing on February 21 as originally planned.

Evidence presented at the hearing indicated that, in 2017, Pinson signed a contract with the board pursuant to which he became the principal of the high school. In 2022, Clements ran for school

---

[1]Section 16-24B-3(m) provides that "[i]f a contract principal is not evaluated as required by this section, his or her contract shall be extended one additional contract year for each contract year not evaluated up to three years."

3

superintendent as the Republican Party nominee. Pinson, who was still serving as the principal of the high school, ran against him as an independent candidate because, he said, he had failed to qualify as a candidate in the Republican Party's primary election. The evidence is undisputed that, after Clements won the general election in November 2022, he refused to accept Pinson's congratulatory telephone calls or text messages. Clements testified that he refused the communications because, he said, at the end of the campaign, someone had said that he had had an affair, which, he said, was not true. Clements acknowledged that he could not confirm that Pinson had made the accusation, although, he said, he suspected that Pinson had done so.

Pinson testified that he saw that Clements was accepting congratulations on a social-media website, and he was concerned about why Clements would not accept his congratulations. Pinson said he had met personally with Clements to congratulate him and that Clements had appeared to be angry about an anonymous post on a social-media site the day before the election regarding the alleged affair. Pinson said that he had told Clements that he had had nothing to do with that statement. Clements said that, during their meeting, he had told Pinson that he

believed him. Pinson said that, during their conversation, he had told Clements that he planned to run against him in a few years, when the next election for superintendent came up. Clements denied that Pinson had told him that.

Pinson testified that two days after Clements took office on January 2, 2023, Clements had requested a video of a physical altercation between Pinson and a student in a hallway in the high school. Clements testified that there had been a complaint that the previous superintendent had not taken any action on the incident. Clements denied that Pinson told him that the previous superintendent had resolved the situation, but Pinson testified that he had told Clements that the previous superintendent had handled the matter with the student, who was in special education, that an individualized-education-plan meeting had been held, and that there was nothing left to do. Clements testified that he did not see anything in the video to support a complaint against Pinson. Pinson said that Clements had told him that he had reviewed the video and that he had not seen anything wrong.

In February 2023, Clements said, he received a complaint from a school employee alleging that Pinson had engaged in sexual harassment

5

that had ended in October 2022. Clements testified that he did not have a copy of the complaint. He also said that such complaints were supposed to be filed promptly, but, because of the seriousness of the complaint, he investigated it. Clements suspended Pinson from his position as principal of the high school at that time.

Clements testified regarding the board's policy that the superintendent was to receive and investigate formal complaints of sexual harassment. He acknowledged that the policy does not authorize the superintendent to delegate the investigation of sexual harassment claims to anyone else, although it specifically provides that school principals or their designees can investigate complaints of violence, threatened violence, and harassment. Clements said that on advice of counsel, he had retained an outside investigator to investigate the sexual harassment complaint against Pinson. Clements said that he had not taken part in the investigation.

Although the policy required the investigation to be conducted promptly, the investigation into the complaint against Pinson began in mid-February 2023 and did not conclude until December 2023, after Pinson filed a lawsuit to force the filing of a report of the investigation.

6

Clements agreed that the investigation was not prompt. Clements testified that the investigation demonstrated "little to no evidence" of sexual harassment; however, he said, it did uncover what he said were "multiple instances of unprofessional conduct," as well as incorrect information on Pinson's application for employment.

On December 6, 2023, Clements sent a letter to Pinson outlining the findings of the investigator and advising him that he was recommending Pinson's termination as a contract principal at the high school based on his failure to perform duties in a satisfactory manner or other good and just cause. Clements set forth a number of examples of false information that he said Pinson had included on his employment application, including his failure to report that he had been terminated or asked to resign from his employment as an employee in two different Alabama school systems, that he had been investigated for a violation of the Alabama's "Code of Ethics For Public Officials, Employees, Etc.," Ala. Code 1975, §§ 36-25-1 et seq., for illegal or unbecoming conduct with a student, that he had been reported for allegedly sending emails of a sexual nature to a high school student who he had coached, and that he

7

had been placed on probation during his employment with an Alabama school district.

Clements also informed Pinson in the December 6 letter that, during the course of the investigation, it was reported that, while he was the contract principal at the high school, he had used unprofessional and obscene language of a sexual nature to employees and subordinates, described his sex life to employees and subordinates, discussed his use of CBD gummies, told inappropriate jokes and shared vulgar memes with employees and subordinates, and had created a hostile and offensive work environment through lewd, sexually oriented comments or jokes and the sharing of sexually explicit photographs and videos.

In his testimony, Pinson denied most of the allegations against him. He testified that he had completed his initial employment application more than twenty years before and had simply added to it as he applied for new jobs throughout his career as an educator in Alabama. He denied that he had been terminated from any position, although he acknowledged that he had resigned from one school position in 2002 in connection with the allegation that he had sent an inappropriate email to a student, but he denied that he had sent the email. He also

8

acknowledged that he had occasionally told a handful of off-color jokes "with some guys" at the high school. Otherwise, Pinson denied the behavior of which he had been accused.

As previously noted, on December 18, 2023, the board held a hearing on whether to cancel Pinson's contract, after which it voted to cancel the contract in accordance with Clements's recommendation. On December 19, 2023, Clements mailed Pinson a letter advising him that the board had canceled his contract. Diane Calloway, a member of the board, testified that she had voted to cancel Pinson's contract to support Clements and because of the false information included in Pinson's employment application and the allegations of a sexual nature contained in the investigator's report. The parties stipulated that the other board members would testify that they voted to cancel the contract for the same reasons.

After the board had presented its evidence at the hearing, Pinson moved for what he called a judgment as a matter of law on the ground

that the board had failed to carry its burden of presenting evidence that it canceled his contract for cause.[2] The circuit court denied that motion.

On February 28, 2024, the circuit court entered its judgment finding that Clements and the board had not based their decision to cancel Pinson's employment contract on impermissible personal or political reasons and that the contract had been canceled for cause. On March 8, 2024, Pinson filed a motion to alter, amend, or vacate the judgment, which the circuit court never ruled on and which, as a consequence and as discussed herein, was denied by operation of law. On March 28, 2024, Pinson appealed the circuit court's judgment to this court pursuant to § 16-24B-3(g), Ala. Code 1975.

Analysis

Before we address the merits of Pinson's appeal, we must first consider the board's contention that the appeal is due to be dismissed as untimely. Specifically, the board argues that Pinson failed to file his notice of appeal by March 13, 2024, within fourteen days of the circuit

---

[2]The motion is correctly termed a motion for a judgment on partial findings because the circuit court held a bench trial rather than a jury trial. See Rule 52(c), Ala. R. Civ. P.; Construction Servs. Grp., LLC v. MS Elec., LLC, 292 So. 3d 643, 650 n.2 (Ala. Civ. App. 2019).

court's entry of the judgment on February 28, 2024, as mandated by § 16-24B-5(a), Ala. Code 1975. That section provides, in pertinent part:

> "All appeals of a final decision from the expedited evidentiary hearing shall lie with the Alabama Court of Civil Appeals. An appeal shall be filed within 14 days after the receipt of the final written decision of the circuit judge or the mediator. An appeal by either party shall be perfected by filing a written notice of appeal with the clerk of the Court of Civil Appeals within 14 days after the receipt of the final written decision of the circuit judge or the mediator by the party. Failure to file a timely notice of appeal shall render the decision of the circuit judge or the mediator final."

Because Pinson did not file his appeal until March 28, 2024, the board says, the appeal is untimely.

Pinson responds that the Alabama Rules of Civil Procedure are applicable in matters such as this and that, under those rules, his motion to alter, amend, or vacate the February 28, 2024, judgment tolled the time in which he had to file his appeal. Because he filed his appeal before his postjudgment motion was even denied, Pinson says, his appeal was timely. Thus, the question we must answer is whether Rule 59, Ala. R. Civ. P., applies in this case and whether the filing of the postjudgment motion tolled the time in which Pinson could file his appeal.

The board relies on Ex parte Guin, 267 So. 3d 335 (Ala. Civ. App. 2018), to support its contention that the notice of appeal had to be filed

11

within fourteen days of the entry of the judgment on February 28, 2024. In that case, this court observed that that fourteen-day period in which to file an appeal in an action brought pursuant to the Act "is the same as that provided in Alabama law for appeals from final judgments of juvenile courts." 267 So. 2d at 338. See also Rule 4(a)(1), Ala. R. App. P. However, the procedural posture of Guin is different than in this case. In Guin, a contract principal challenging the cancelation of her employment contract had sought a writ of mandamus regarding interlocutory discovery orders. It is well settled that a motion to alter, amend, or vacate, or to otherwise reconsider an interlocutory order does not toll the time in which a petition for a writ of mandamus must be filed. See Ex parte Troutman Sanders, LLP, 866 So. 2d 547, 549-50 (Ala. 2003). The present case involves an appeal of a final judgment such that, if Rule 59, applies, the deadline by which to have filed a notice of appeal is tolled by a timely filed postjudgment motion.

Rule 1, Ala. R. Civ. P., provides that the Rules of Civil Procedure govern procedure in the circuit courts "in all actions of a civil nature, including those in which the State of Alabama or a political subdivision thereof is a party, whether cognizable as cases at law or in equity before

the adoption of these Rules of Civil Procedure, and in proceedings enumerated in Rule 81 [, Ala. R. Civ. P.]." The present action was filed in a circuit court and is of a civil nature. Moreover, the Act does not exempt proceedings brought pursuant to its provisions from the Alabama Rules of Civil Procedure. Thus, we conclude that the Alabama Rules of Civil Procedure, including Rule 59, apply to this case. Cf. Ex parte A.M.P., 997 So. 2d 1008, 1013 n.3 (Ala. 2008) (holding that, although former § 26-10A-26, Ala. Code 1975, which permitted appeal of probate court's final judgment of adoption, did not provide for tolling of period to file notice of appeal, a timely filed postjudgment motion would toll period for filing notice of appeal because separate statute provided that the Alabama Rules of Civil Procedure applied to such cases).

Here, the circuit court entered its judgment on February 28, 2024, and Pinson filed a timely motion to alter, amend or vacate the judgment on March 8, 2024. Because the circuit court never ruled on that motion, it was denied by operation of law. As noted, Pinson filed his notice of appeal on March 28, 2024. We need not decide whether Pinson's postjudgment motion was denied by operation of law fourteen days after he filed it (as is the case in juvenile court and district court, see Rule

13

59.1(dc), Ala. R. Civ. P.; Rule 1(b), Ala. R. Juv. P., or ninety days after he filed it, see Rule 59.1, Ala. R. Civ. P. If the former, then Pinson filed his notice of appeal within fourteen days following the denial of his postjudgment motion by operation of law; if the latter, Pinson filed his notice of appeal before his postjudgment motion was denied by operation of law, and, thus, the notice of appeal was held in abeyance until the ninety-day period ran, see Rule 4(a)(5), Ala. R. App. P. Either way, Pinson filed his notice of appeal well within the fourteen-day window permitted by § 16-24B-5(a). Accordingly, we conclude that the appeal is timely.

Turning to a separate jurisdictional matter that Pinson himself raises and addresses (perhaps out of concern that this court would raise the matter ex mero motu), Pinson asserts that the fact that the circuit court did not hold the hearing until two days after the expiration of the forty-five-day period provided by the Act for the holding of the hearing, see § 16-24B-3(e)(3), did not deprive the circuit court of jurisdiction over the case. The board, for its part, does not challenge the circuit court's power to act beyond the forty-five-day period, and we have found no legal authority that prohibits the circuit court from acting beyond the forty-five-day period.

14

In <u>J.L. v. Morgan County Department of Human Resources</u>, 182 So. 3d 570, 483 (Ala. Civ. App. 2015), this court considered whether a juvenile court retained jurisdiction over an action to terminate parental rights if the action was not completed within the ninety-day period after the parent had been served with the summons and complaint, as § 12-15-320(a), Ala. Code 1975, required. We held that the juvenile court's failure to comply with the mandatory provision in § 12-15-320(a) required reversal only if the failure to comply impaired the parent's rights. Here, Pinson does not claim that holding the hearing two days beyond the forty-five-day period set forth in § 16-24B-3(e)(3) violated or impaired his rights in any way, and we agree with Pinson that circuit court retained jurisdiction over this matter at the time that it held the hearing.

We turn now to the merits of Pinson's arguments. He first contends that the circuit court applied the wrong provision of § 16-24B-3(e)(2) in upholding the termination of his employment at the high school. Specifically, Pinson says that the circuit court relied on § 16-24B-3(e)(2)a., which forbids the <u>nonrenewal</u> of a contract for personal or political reasons and pursuant to which the contract principal bears the burden of proof, rather than § 16-24B-3(e)(2)b., which applies when a

contract is <u>terminated</u> and which places the burden of proof on the board to demonstrate that the cancelation was solely for cause for one of the reasons set forth in § 16-24B-3(e)(1).[3]

---

[3]Section 16-24B-3(e)(1), Ala. Code 1975, provides:

"An employing board may cancel the contract of a contract principal for cause at any time for any of the following reasons:

"a. Immorality.

"b. Insubordination.

"c. Neglect of duty.

"d. Conviction of a felony or a crime involving moral turpitude.

"e. Failure to fulfill the duties and responsibilities imposed upon principals by this code.

"f. Willful failure to comply with board policy.

"g. A justifiable decrease in the number of positions due to decreased enrollment or decreased funding.

"h. Failure to maintain his or her certificate in a current status.

"i. Other good and just cause.

"j. Incompetency.

"k. Failure to perform duties in a satisfactory manner."

16

In Pinson's notice to the board requesting an expedited nonjury evidentiary hearing, he stated that his request was made pursuant to § 16-24B-3(e)(2). In turn, the board filed a notice with the circuit court that it was requesting an expedited hearing pursuant to § 16-24B-3(e)(2)b. In its notice, the board specified that it had voted to cancel Pinson's contract for cause. Prior to the trial, Pinson requested that the circuit court realign the parties to show the board as a plaintiff, because, under § 16-24B-3(e)(2)b., the board bore the burden of proof. The circuit court granted that motion. At the evidentiary hearing, the board presented evidence demonstrating that its reasons for canceling Pinson's contract were for what they characterized as his failure to perform his duties in a satisfactory manner, for submitting incorrect or false information on his job application, and for the sexual nature of several communications outlined in the investigator's report to Clements. Pinson elicited evidence tending to show that there was a political basis for Clements's recommendation to terminate the contract. Finally, in the judgment itself, the circuit court did not refer to either provision § 16-24B-3(e)(2)a. or -b. and said that it had applied proof by the preponderance of the evidence as to whether the recommendation of Clements and the decision

17

of the board to cancel Pinson's contract "was impermissibly based upon personal or political reasons." The circuit court summarized the evidence, including noting that none of the testimony by Clements or by the board indicated that there was any personal or political bias in the decision to cancel Pinson's contract. It wrote that it did not find the reasons set forth in the hearing to be personal or political and that the board canceled Pinson's contract for cause by applying § 16-24B-3(e)(1), which, as noted above, see note 3 supra, sets forth the possible grounds for canceling a contract principal's employment for cause.

In considering the parties' filings, the evidence presented at trial, and the language the circuit court used in its judgment, it appears that the circuit court properly considered whether the board presented sufficient proof that it canceled Pinson's contract for cause. Although the circuit court also used language in its judgment reflecting that it failed to find that the board canceled Pinson's contract for personal or political reasons (which reflects a consideration of the inapplicable § 16-24B-3(e)(2)a.), we cannot, based on that consideration, discount the circuit court's finding that the board had appropriately applied the statute in determining to terminate Pinson's contract for cause, which is consistent

with application of the section applicable to the termination of Pinson's contract, i.e. § 16-24B-3(e)(2)b. Therefore, we will not reverse the judgment on this ground.

Pinson next contends that the board failed to prove by a preponderance of the evidence "each cause and that Pinson's termination was solely for such causes." He argues that the board failed to put on a single fact witness to prove what he says were the false allegations against him. The board argues that the great weight of the evidence established that Pinson's contract was terminated for cause and not for political reasons.

The Act provides that, in cases involving the cancelation of a principal's contract, the board must prove, by a preponderance of the evidence, "that the cancellation is solely for cause pursuant to subdivision (1) of this subsection." § 16-24B-3(e)(2)b. The Act further provides that this court must affirm the decision of the circuit court unless we conclude that that decision is against the great weight of the evidence. § 16-24B-5, Ala. Code 1975.

In Curry v. Russell County Board of Education, 125 So. 3d 711 (Ala. Civ. App. 2013), a case upon which the board relies, an African-American

19

principal alleged that her school district's superintendent refused to renew her contract as principal based on the impermissible personal reason of racism. At the evidentiary hearing in Curry, the superintendent testified that he had decided not to renew the contract because, he said, the school's test scores were declining under the principal's tenure and that the principal showed a lack leadership by her

> "failure to make herself readily available to communicate with the parents of students, her lack of problem solving, her failure to analyze test scores in order to determine the areas in which instruction was needed, and her failure to make use of technology that was available to enhance the learning experience of the students at her school."

Id. at 717. A curriculum director for the school testified that she had shared data with the superintendent indicating that the numerical score that the school system used to evaluate principals fell within the "unsatisfactory" range for the principal. The Curry opinion does not discuss evidence, if any, that was offered to prove the veracity of the reasons the superintendent relied on in making his recommendation. School board members who voted in favor of the superintendent's recommendation testified that their decisions were based on that recommendation and that the principal's race played no part in their considerations.

20

The principal argued on appeal in <u>Curry</u> that the superintendent's reasons for recommending not renewing her contract were invalid. This court rejected the principal's contention, writing, without discussing the evidence, that the evidence indicating that those reasons were valid was in conflict, and, "because there was credible evidence supporting the circuit court's implicit determination that the reasons cited by the superintendent for recommending nonrenewal of [the principal's] contract were valid, we cannot hold that that implicit determination regarding an issue of fact is against the great weight of the evidence." <u>Id.</u> at 719.

Here, the evidence presented indicates that Clements relied on information that the outside investigator had gathered indicating that Pinson had not been truthful in his employment application or had omitted key information, as well as information that Pinson had engaged in inappropriate communications of a sexual nature with his employees, in deciding to cancel Pinson's contract. For example, after the circuit court overruled an objection by Pinson's attorney, Clements testified that during the investigation into the allegations of sexual harassment and inappropriate conduct, the investigator found "multiple instances of

21

unprofessional conduct," as well as incorrect information on Pinson's employment application. Clements said that he reviewed the facts and discovered that, despite having answered on his application that he had never been dismissed from employment with a school, evidence indicated that Pinson had been dismissed from the Tallapoosa school district in 2013 in relation to a 2002 incident that had occurred in a Sylacauga school where Pinson admitted to inappropriate conduct, sexual in nature, with a high school student. Clements also testified that multiple people had provided information that Pinson had made inappropriate sexual comments and had used inappropriate language.

Evidence also indicated that board members relied on Clements's recommendation to vote in favor of canceling the contract. Although Pinson disputed the reasons on which Clements had based his recommendation, and the investigator acknowledged the disputed evidence, the record before us indicates that there was sufficient evidence from which the circuit court could reasonably find that Clements had recommended canceling Pinson's contract based on Pinson's including incorrect information in his employment application and engaging in unprofessional conduct by making inappropriate comments of a sexual

nature. Therefore, we cannot say that the board failed to meet its evidentiary burden, and there is no basis on which to reverse the court's decision that Pinson's contract was canceled solely for cause.

Pinson next contends that the circuit court erred in denying what he called a motion for a judgment as a matter of law but which is properly referred to as a motion for a judgment on partial findings. See n.1, supra. Pursuant to Rule 52(c), Ala. R. Civ. P., which governs judgments on partial findings, if

> "a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment may be supported by findings of fact and conclusions of law."

Here, the circuit court denied Pinson's motion, declining, as permitted by Rule 52(c), to render a judgment until the close of the evidence. We find no error in the circuit court's exercise of its discretion in this regard, particularly because, as we have already determined, the board presented sufficient evidence to support the circuit court's judgment upholding the board's decision to cancel Pinson's contract.

23

Pinson next contends that the board's policies require a superintendent to investigate claims of sexual harassment and do not permit the superintendent to delegate such investigations to someone else, as Clements did in this case. By improperly delegating the investigation of the sexual-harassment allegations against Pinson to an outside investigator, Pinson argues, Clements was unable to make credibility determinations of the people involved in the investigation.

The board contends that nothing in the board's policy prohibits the superintendent from using an outside investigator to conduct an investigation into a claim of sexual harassment and, in this case, it says, an outside investigator "was the only option to ensure a fair and impartial investigation that was not clouded by the appearance of political or personal bias because Clements and Pinson had been political opponents in the superintendent election." The record does not contain a copy of the board's policies regarding this issue. However, we note that the investigator did not find sufficient evidence to corroborate the sexual-harassment claim, and Clements's recommendation to cancel Pinson's contract was not based on that claim. As the board argues, Pinson's contention about the violation of the policy had no effect on Clements's

recommendation and the board's decision to cancel the contract based on Pinson's failure to perform his duties in a satisfactory manner or other good and just cause. "The doctrine that error, in order to furnish a ground for reversal, must be prejudicial is generally applied to review of a decision by an administrative board. 2 Am. Jur. 2d Administrative Law § 758 (1962)." Ferguson v. Hamrick, 388 So. 2d 981, 984 (Ala. 1980); see also Select Specialty Hosps., Inc. v. State Health Plan. & Dev. Agency, 317 So. 3d 1007, 1016 (Ala. Civ. App. 2020). Thus, to the extent that Clements may have violated a policy in allowing an outside investigator to investigate the claim of sexual harassment (and we reach no conclusion that he did), because that claim did not play a part in his recommendation to end Pinson's contract, Pinson has failed to demonstrate that the investigation violated his rights under the policy that he says was operative. Moreover, he has failed to provide this court with relevant authority showing that the board's decision was due to be overturned as a result of any purported policy violation in the investigation of the sexual-harassment complaint.

Pinson next contends that the circuit court erred in failing to permit him to "amend his complaint" to show that the board had not conducted

his annual performance evaluation, which, he said, necessarily resulted in the extension of his existing contract under § 16-24B-3(m). As mentioned, Pinson waited until two days before the trial to file that "amended request for reinstatement" in which he asserted, for the first time, that, pursuant to § 16-24B-3(m), his contract was extended for one year by operation of law because he had not been evaluated the previous year.[4] At the outset of the evidentiary hearing, the board's attorney argued that the provision regarding the automatic extension of a contract if no evaluation had been conducted was not covered under the same part of the statute governing evidentiary hearings. The circuit court agreed, and no evidence was presented regarding that issue.

Pinson argues that there was no evidence that the proposed "amended claim" would cause undue prejudice to the board or delay the trial, and that Rule 15(a), Ala. R. Civ. P., provides that amendments to complaints "shall be freely allowed when justice so requires." We first note that this case came before the circuit court pursuant to the board's notice that Pinson had requested an expedited evidentiary hearing. Pinson had not filed a complaint, and we question whether Rule 15 is

---

[4] See note 1, supra.

26

applicable to this situation. Nonetheless, because Pinson relies on that rule as the basis for his argument, we note that he fails acknowledge that, under Rule 15(a), when less than forty-two days remain before the first trial setting, "a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause." Because Pinson did not seek leave of court before filing his "amended request for reinstatement," and because he made no attempt to show good cause as to why the "amendment" should be permitted, the circuit court was free to reject Pinson's attempt to insert into the action his claim for reinstatement under § 16-24B-3(m). See Ex parte Alabama Med. Cannabis Comm'n, [Ms. CL-2024-0292, June 21, 2024] ___ So. 3d ___, ___ (Ala. Civ. App. 2024) ("When deciding whether to grant a Rule 15(a) motion to allow a late amendment, a trial court exercises judicial discretion.").

Conclusion

Pinson has failed to demonstrate that the circuit court erred in determining that Clements recommended and the board terminated his contract for cause and not for political or personal reasons. Therefore, the judgment is affirmed.

AFFIRMED.

Moore, P.J., and Hanson, J., concur.

Edwards, J., concurs in the result, without opinion.

Lewis, J., recuses himself.